William J. BETHEL, Jr. dba Ra-Comm
Electronics, Appellant,

v.

BUTLER DRILLING COMPANY,
Appellee.

No. A2546.

Court of Appeals of Texas,
Houston (14th Dist.).

May 27, 1982.

Murry B. Cohen, Wm. B. (Ben) Adair, Brynes, Myers, Adair, Campbell & Sinex, Houston, for appellant.

Harold Lloyd, Michael L. O'Brien, Houston, for appellee.

Before J. CURTISS BROWN, C. J., and JUNELL and PRICE, JJ.

PRICE, Justice.

This is a breach of contract case. The principal issue on appeal is whether a provision in the written contract in question should be construed as a liquidated damage provision or whether it is a penalty provision which may not be enforced by appellant as liquidated damages. Other points of error asserted by appellant William J. Bethel, Jr. d/b/a Ra-Comm Electronics relating to attorney's fees and pre-judgment interest and cross points by appellee Butler Drilling Corporation are discussed below. We reform the judgment of the trial court to provide for pre-judgment interest from October 1, 1977, on the sum of $10,189.72, and otherwise affirm the judgment of the trial court.

The appellant was originally engaged by Butler Drilling Company to perform certain motor vehicle radio maintenance and repair duties for appellee. From 1967 to 1974 appellant operated under an oral month to month agreement. By contract dated August 28, 1974, appellant and Butler Drilling Company entered into a written contract to perform such motor vehicle radio repairs and maintenance on a twenty-four hour on-call basis. The services provided for under the contract were exclusive as to appellee but non-exclusive as to appellant. The contract was signed by appellant William J. Bethel, Jr., and for Butler Drilling Company was signed by its president, Duncan Butler, with a notary acknowledgment also dated August 28, 1974. On October 1, 1974, Butler Drilling Company sold its assets to Mitchell Energy Corporation and Butler Drilling Corporation became the successor corporation. Duncan Butler also served as president of the successor corporation. The contract provided that employment of appellant would continue for a period of three consecutive years beginning September 1, 1974, and ending August 31, 1977. Appellant would be paid in specified semi-monthly installments with the amount of such payments to increase yearly in specified sums. Additional labor performed by appellant would be billed and paid for at an hourly rate of $10 per hour. Appellee agreed to provide either a vehicle or travel reimbursement to appellant as well as shop space, utilities and parking facilities. Appellee further agreed to furnish all repair and replacement parts; appellant was to purchase these parts and bill appellee monthly for them at cost plus fifteen percent. The contract contained the following

provisions which relate to the liquidated damages claimed by appellant in this appeal:

> "Because the services to be performed by Ra-Comm are personal services, the death of William J. Bethel, Jr., or such bad health or accident as shall render him unable to fully perform said services, shall be grounds to relieve both parties from any further obligations concerning the contract. In the event that *Butler breaches the contract and fails to perform for any reasons* other than those set out above, then it shall pay as liquidated damages to Ra-Comm the balance of the monthly installment payments set out above."

It was undisputed the contract was terminated by appellee on October 24, 1975, but there was a dispute as to whether such termination was with or without good cause. The jury found in answer to special issues that Butler Drilling Corporation assumed and ratified appellant's contract with Butler Drilling Company, that appellant was an independent contractor from October 1, 1974 to October 24, 1975, that appellant was terminated, that Butler Drilling Corporation did not have good cause to terminate appellant, that Duncan Butler was authorized by Butler Drilling Company to enter into the contract, that $14,500 would reasonably and fairly compensate appellant for the termination of the contract, that Butler Drilling Corporation did not convert any of appellant's personal property on or about October 24, 1975, that appellant did not furnish Butler Drilling Corporation any equipment for which he was not paid, that reasonable attorney's fee for appellant's attorneys was $12,000, and that appellant did not convert assets of Butler Drilling Corporation to his own use. The court on appellee's Motion disregarded the jury finding that appellant did not convert any of appellee's assets and rendered final judgment in favor of appellant for $10,189.72 by taking the jury's damage answer of $14,500.00 and subtracting the conversion offset admitted by appellant in the amount of $4,310.28.

The court also awarded $12,000.00 in attorney's fees on the jury finding, and denied appellant's Motion for Judgment on attorney's fees of $16,500.00. The court further refused appellant's Motion for Judgment for liquidated damages of $41,825.00 and pre-judgment interest on the liquidated sum. From this final judgment appellant appeals.

Appellant's seven points of error are that the trial court erred in denying appellant's Motion for Judgment for liquidated damages provided by the contract and that there was no evidence and insufficient evidence to prove the liquidated damage clause was a penalty; that the trial court erred in denying appellant's Motion for Judgment for $16,500.00 attorney's fees and that there was no evidence and insufficient evidence to support the jury finding of $12,000.00 attorney's fees; and that the trial court erred in not awarding pre-judgment interest from January 1, 1976.

With respect to appellant's first three points of error, we construe the language employed in the contract in question to be a penalty, as a matter of law as pleaded by the appellee in its trial pleading, and as construed by the trial court, rather than a valid liquidated damage provision as contended by appellant. The liquidated damage provision is not triggered solely by contract termination and nonpayment of monthly rentals by Butler. The liquidated damage provision was not carefully drawn and as it was written, it applied equally to any breach of *any* provision of the contract by appellee irrespective of the importance or triviality of such breach. The liquidated damage provision of the contract in question, as written, would apply with equal force for such trivial breaches by appellee Butler as failing to pay utilities, provide parking space or pay an additional hourly labor charge of $10.00. Under the liquidated damage clause as written, appellant would be entitled to the full amount of monthly payments for the full term of the contract irrespective of the nature of the breach or appellant's actual loss or damage. Because the contract provides the same rep-

aration for the breach of a trivial or comparatively unimportant stipulation as for the breach of the most important one or of the whole contract, we hold that the parties have not adhered to the rule of just compensation and that the provision is a penalty. The leading case on the subject is *Stewart v. Basey*, 150 Tex. 666, 668, 245 S.W.2d 484 (Tex.1952), which involved a building lease providing for monthly rentals of $325.00 per month. Prior to the completion of the lease term, the lessee vacated the building and failed to pay the monthly rentals as provided in the written contract. The lease contract of the parties included a liquidated damage provision that provided "[t]he failure of Lessee to make said payment or payments *or the breach of this contract otherwise* by him shall render him liable to Lessors, as agreed liquidated damages, the sum of One Hundred Fifty ($150) Dollars *per month for each and every month of the unexpired term...*" (Emphasis added.) *Stewart v. Basey, supra* at 485. In holding that such stipulated damage provision would be treated as a penalty the Texas Supreme Court pointed out that the liquidated damage provision was not carefully drawn and was not limited to the breach of any one particular covenant, but rather provided for the same reparation for the breach of a trivial or comparatively unimportant stipulation as for the breach of the most important one of the contract. Therefore, the Supreme Court reasoned, the provision did not adhere to the rule of just compensation. The court then reversed and remanded the case to determine the amount of actual damages to which lessor was entitled for the breach. The court emphasized that damages to be enforceable as liquidated damages must be uncertain and the stipulation must be reasonable. The right of competent parties to make their own bargains is not unlimited. The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. A party has no right to have a court enforce a stipulation which violates the principle underlying the rule. Again, the Supreme Court in *Stewart v. Basey, supra*, at 486, stated:

"The true theory is well expressed in Williston on Contracts, Revised Edition, Sec. 779, p. 2192, in this language: 'But as has been seen, the chief, almost the only, means of determining whether the parties in good faith endeavored to assess the damages is afforded by the amount of damages stipulated for, and the nature of the breach upon which the stipulation was agreed to become operative...'"

Finally, the Supreme Court quoted from the comments from Restatement of Contracts, Sec. 339, subsection (1) as follows:

"b. Contracts are frequently made in which performance of very different degrees of importance and value are promised and one large sum of money is made payable as damages for any breach whatever. Since such a contract promises the same reparation for the breach of a trivial or comparatively unimportant stipulation as for the breach of the most important one or of the whole contract, it is obvious the parties have not adhered to the rule of just compensation. In this matter neither the intention of the parties nor their expression of intention is the governing consideration. The payment promised may be a penalty, though described expressly as liquidated damages, and vice versa."

Appellant here urges that the liquidated damage provision in the contract in question should be enforced in this case because of the contract termination by appellee without good cause and his nonpayment of monthly rentals, but that it should not be enforced for trivial breaches of the contract. We recognize it is a stringent case on the facts from appellant's viewpoint, but we do not believe that we are empowered to pick and choose which breaches are enforceable by liquidated damages since the provision plainly states it is applicable to *all* breaches of the contract and the Supreme Court in *Stewart v. Basey* has so directly spoken. Further, if there is any doubt on the question under the language of the instrument, that doubt must be resolved against appellant who prepared the instrument. *American Lease Plan v. Ben-Kro*

*Corporation,* 508 S.W.2d 937, 942 (Tex.Civ. App.-Houston [1st Dist.] 1974, writ ref'd n.r.e.). Another similar case in point is *Krenek v. Wang Laboratories, Inc.,* 583 S.W.2d 454 (Tex.Civ.App.-Waco 1979, no writ) where the lessor brought action against lessee for failure to make monthly payments under an equipment lease and sought to recover liquidated damages as provided in the contract. The Waco Court, in reversing the trial court, followed *Stewart v. Basey, supra,* and held the provision was a penalty because it could be triggered by a breach of lesser covenants in the lease and not just by a breach of a major covenant such as nonpayment of rentals. Still another case in point is *Servisco v. Tramco, Inc.,* 568 S.W.2d 434 (Tex.Civ.App.-Texarkana 1978, writ ref'd n.r.e.) which relied on *Stewart v. Basey, supra,* and distinguished a case relied upon by appellant in the instant case, *Oetting v. Flake Uniform and Linen Service,* 553 S.W.2d 793 (Tex.Civ. App.-Fort Worth 1977, no writ).

Appellant relies principally on *Oetting v. Flake Uniform & Linen Service, supra.* That case is distinguishable from the instant case because as the Fort Worth Court specifically pointed out at page 796 of the opinion, the liquidated damage provision in that case could be triggered *only* by the failure of the customer to pay the monthly service charge and the termination of the contract by the supplier because of nonpayment by the customer. The Fort Worth Court pointed out that the liquidated damage clause as written could not be triggered by any lesser breaches, but could only be triggered by the most major breach of all, nonpayment. Appellant also cites *Johnson Engineers, Inc. v. Tri-Water Supply Corporation,* 582 S.W.2d 555 (Tex.Civ.App.—Texarkana 1979, no writ) and *R.M. Robinson v. Granite Equipment Leasing Corporation,* 553 S.W.2d 633 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). In *Johnson Engineers Inc., v. Tri-Water Supply Corporation, supra,* which was a suit for payment under a construction contract, liquidated damages were pled as an offset to cover the period of delay beyond the agreed completion date of the contract. There was no

defensive pleading that the liquidated damage provision was a penalty, as was done in the instant case, and there was no evidence of actual damages to show any disproportionate amount of actual damages to stipulated damages. More importantly, the liquidated damage clause did not apply to major and trivial covenants under the contract, but applied only to the payment of $100.00 per day for each day of delay by the appellant after the allotted construction time under the contract. *R.M. Robinson v. Granite Equipment Leasing Corporation, supra,* was a nonjury trial for liquidated damages by reason of defendant-lessee's default of monthly payments under a personal property lease. The liquidated damage provision requiring payment of all unaccrued rentals was triggered only by the defendant-lessee's default in timely payment of such monthly rentals, and not by any breach of any minor or trivial covenant in the lease. Further, there was no defensive pleading that it was a penalty and such defense was waived. Appellant's first three points of error are overruled.

Appellant contends by his next three points of error that the trial court erred in denying appellant's Motion for Judgment for attorney's fees in the amount of $16,500 and allowing only $12,000 attorney's fees on the jury finding, because there was no evidence or insufficient evidence to support such finding. Appellant's trial attorney testified that he was familiar with fees charged for services similar to those rendered in this case and that "it is my opinion that ... a proper legal fee and reasonable fee for the same or similar circumstances in Harris County would be approximately $16,500." There was no cross-examination of the witness nor was there any contradictory attorney fee expert opinion evidence produced by appellee. The jury found $12,000 would be a reasonable attorney's fee. Appellant recognizes the unbroken long line of case authority holding that the amount of attorney's fees is a fact issue even when no contradictory evidence is offered. Further, the trier of fact may determine the credibility of the wit-

ness and accept or reject his expert opinion testimony in whole or in part. However, appellant urges such authority was changed by the June 6, 1979, amendment to Tex. Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp. 1981) which provided:

" . . . The usual and customary fees in such cases *shall be presumed to be reasonable*, but such presumption may be rebutted by competent evidence . . ." (Emphasis added).

The amendment further provides the act is to be liberally construed to promote its underlying purposes. In addition, it is remedial in nature and is intended to apply to all pending and future actions regardless of the time of institution or of the accrual of any cause of action asserted. Thus, the 1979 amendment applies to the instant case. Appellant contends the presumption found in Article 2226, as amended, mandates and makes conclusive an award of attorney's fees in the amount testified to by appellant's counsel in the absence of contradictory evidence. No cases have been cited to us by the parties nor have we found any construing the effect or meaning of this presumption since the 1979 amendments. Appellee cites two cases, *Law Offices of James R. Bass, Inc. v. Bryan*, 609 S.W.2d 652 (Tex. Civ.App.—San Antonio 1980, no writ), and *Graves v. Sommerfeld*, 618 S.W.2d 952 (Tex. Civ.App.—Waco 1981, no writ). Both of these cases hold the issue of amount of attorney's fees is a fact issue, but neither case discusses the 1979 amendment, and it is not shown from the opinions whether the cases were tried before or after the effective date of the 1979 amendments. *See also: Neal v. Neal*, 606 S.W.2d 729 (Tex.Civ. App.—Beaumont 1980, no writ) to the same effect.

A look at the legislative history relating to the presumptions on attorney's fees under Article 2226 is helpful. In 1971, the 62nd Legislature amended Article 2226 to provide the then current State Bar Minimum Fee Schedule *shall* be prima facie evidence of reasonable attorney's fees, and in nonjury cases the court may take judicial knowledge of the minimum fee schedule and of the contents of the case file in determining the amount of attorneys fees without hearing further evidence. The cases following that amendment uniformly held that the bar fee schedule was not conclusive even in the absence of contradictory proof but was only prima facie evidence of reasonable attorney's fees. *Aztec Pipe and Supply Company Inc. v. Sundance Oil Company*, 568 S.W.2d 401 (Tex.Civ.App. —Houston [1st Dist.] 1978, writ ref'd n.r.e.). Also, opinion testimony as to the value of services was held not conclusive, and in jury cases if reliance was not made on the bar fee schedule, there had to be evidence of the *reasonableness* of attorney's fees to support such an award. *Dorsey v. Aguirre*, 552 S.W.2d 576 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). In summary judgment cases, the courts also uniformly held there could be no summary judgment as to the amount of reasonable attorney's fees because the uncontradicted opinion of an expert was only an opinion, thereby raising only a fact issue on the amount. *McFadden v. Bresler Malls Inc.*, 526 S.W.2d 258 (Tex.Civ.App.— Austin 1975, no writ), *appeal after remand*, 548 S.W.2d 789 (Tex.Civ.App.—Austin 1975, no writ); *Coward v. Gateway National Bank of Beaumont*, 525 S.W.2d 857 (Tex. 1975).

Effective January 1, 1978, however, Tex. R.Civ.P. 166–A was amended to provide that a Summary Judgment *may* be based on uncontroverted testimonial evidence of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts—if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies and could have been easily controverted. Thus, it became possible to obtain a Summary Judgment on the issue of reasonable attorney's fees on the basis of uncontradicted Summary Judgment evidence. *Bado Equipment Co., Inc. v. Ryder Truck Lines Inc., d/b/a Ranger Division*, 612 S.W.2d 81, 83 (Tex. Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

Effective August 29, 1977, the 65th Legislature deleted the provision in Art. 2226

which had provided that the State Bar Minimum Fee Schedule shall be prima facie evidence of reasonable attorney's fees and that the court in a nonjury case may take judicial knowledge of the schedule and the contents of the case file in determining the amount of reasonable attorney's fees without further evidence. That deletion was prompted by the United States Supreme Court decision in *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). Thereafter, in every case positive proof by opinion testimony of *reasonableness* was required to support the award of attorney's fees in a jury or nonjury trial. In the absence of testimony that such fees were reasonable, no such attorney's fees were recoverable. *Brown v. De La Garza Service Center, Inc.*, 576 S.W.2d 134 (Tex. Civ.App.—Waco 1978, no writ).

Finally, the 66th Legislature, effective June 6, 1979, amended the current Article 2226 to provide that usual and customary fees in such cases shall be presumed to be reasonable, and also added that in a jury or nonjury case if the issue of attorney's fees is submitted to the court for determination, the court may in its discretion take judicial knowledge of the usual and customary fees in such matters and of the contents of the case file without receiving further evidence. This raises the question of whether the reasonableness of such an unrebutted presumption of usual and customary fees under the 1979 amendment should be treated differently than the 1971 prima facie evidence provision of reasonableness under the State Bar Minimum Fee Schedule in a trial on the merits. Should it be treated as a true presumption which entitles one to an instructed verdict in the absence of evidence to the contrary? *Farley v. M M Cattle Company*, 529 S.W.2d 751, 756 (Tex. 1975); *Sudduth v. Commonwealth County Mutual Ins. Co.*, 454 S.W.2d 196, 198 (Tex. 1970).

We hold that Article 2226, as amended, does not render conclusive and mandatory the award of a specific sum of attorney's fees based on uncontradicted expert opinion evidence of reasonableness or uncontradicted evidence of "usual and customary fees." We believe the effect of the statute is to presumptively provide the element of "reasonableness" of attorney's fees where there is uncontradicted testimony of what "the usual and customary fees" are and that such evidence will support an award up to that amount, but that such evidence is not conclusive and mandatory. Where the issue of attorney's fees is determined by the court, whether it is a jury or nonjury case, the court is authorized to take judicial notice of what the usual and customary fees are in such matters and of the contents of the case file without hearing further evidence. We do not believe this means, or that it was intended, that, the court, having taken judicial notice of "usual and customary fees," is mandated to award that specific amount in every instance. Rather, we think the court is authorized to make an award up to that amount. Neither do we believe the statute mandates the award of a specific sum in a jury or nonjury case where there is unrebutted direct testimony of "the usual and customary fees," or of unrebutted opinion testimony of "reasonable attorneys fees" whether or not they are the usual and customary fees. Under the current provisions of Tex.R.Civ.P. 166–A, the court may render summary judgment on attorney's fees if the affidavit or other summary judgment evidence meets the clear, positive, direct and uncontradicted requirements of that rule. On the other hand, as stated above, we do not believe Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1981) makes conclusive or mandatory in a trial on the merits the award of a specific sum based on uncontradicted evidence of "the usual and customary fees." This holding and interpretation will reconcile the range of possible attorney's fee awards in cases where there is uncontradicted evidence of "the usual and customary fees," with the cases where there may be no evidence of "usual and customary fees" but there is uncontradicted opinion evidence of "reasonableness" of attorney's fees. Also, this view of the meaning and application of Art. 2226 would apply equally to a default judgment situation where there is always

uncontradicted oral testimony or uncontradicted affidavit proof on attorney's fees. We do not believe Art. 2226 was intended to render conclusive or mandate a specific award of attorney's fees in default judgment situations.

■ If the Legislature had intended uncontradicted opinion evidence on reasonableness of attorney's fees or uncontradicted evidence of "usual and customary" fees to be conclusive and mandate the award of a specific sum, it could easily have so stated. In the absence of such a clear statement, we do not believe the Legislature so intended. The previous amendments all appear to relate to the question of supplying the element of "reasonableness" and of prima facie proof, and we believe this is also the thrust of the June 6, 1979, amendment. We hold Article 2226, as amended, and the state of the evidence does not mandate the award of $16,500.00 attorney's fees in the instant case and that the jury answer of $12,000.00 was authorized and supported by the evidence.

Additionally, in the case at bar, the opinion of appellant's trial attorney on attorney's fees was not couched in terms of "the usual and customary fees" which is the language used in Article 2226 to invoke the presumption of reasonableness. Further, the attorney's opinion testimony of the amount was not clear, direct and positive. The appellant's trial attorney opined that a reasonable fee for these services would be "approximately $16,500.00." The uncontradicted evidence did not indicate what "the usual and customary fees" were, but rather supplied the element of "reasonableness" and stated a reasonable fee would be approximately $16,500.00. Appellant's points of error four, five and six are overruled.

■ Appellant's seventh point of error contends the trial court erred in denying 6% pre-judgment interest from January 1, 1976, under the provisions of Tex.Rev.Civ. Stat.Ann. art. 5069–1.03 (Vernon Supp. 1981). That statute provides:

"When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable."

Where pre-judgment interest is sought on the basis of a written contract fitting the description of Article 5069–1.03 an award of this statutory interest, or interest eo nomine as it is known, may be supported by a prayer for general relief. See e.g., *The Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, 578 S.W.2d 109 (Tex.1978) (allowing pre-judgment interest on a letter of credit), and *Miner-Dederick Construction Corporation v. Mid-County Rental Service, Inc.*, 603 S.W.2d 193 (Tex.1980) (allowing pre-judgment interest on construction contracts). It is distinguished from a situation where pre-judgment interest is sought at common law as an element of damages, in which case the plaintiff must have a pleading to support pre-judgment interest. *Black Lake Pipe Line Company v. Union Construction Company, Inc.*, 538 S.W.2d 80 (Tex.1976) (quantum meruit under a construction contracts); *Pickett v. J. J. Willis Trucking Company*, 624 S.W.2d 664 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Zuider Zee Oyster Bar, Inc. v. Martin*, 503 S.W.2d 292 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.); *City of Galveston v. Russo*, 508 S.W.2d 882 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). In either case, pre-judgment interest is recoverable as a matter of right where an ascertainable sum of money is determined to have been due and payable at a date certain prior to judgment. *The Republic National Bank of Dallas v. Northwest National Bank of Fort Worth, supra; Black Lake Pipe Line Company v. Union Construction Company, Inc., supra.* Pre-judgment interest is that interest calculated on a sum payable to the plaintiff from the time of his loss or injury to date of judgment. *The Republic National Bank of Dallas v. Northwest National Bank of Fort Worth, supra.* Appellant did not have a specific pleading for pre-judgment interest in the instant case, but he

had a general prayer for relief which is sufficient for the award of pre-judgment interest under Art. 5069–1.03. *The Republic National Bank of Dallas v. Northwest National Bank of Fort Worth, supra,* at 116.

In the instant case, the suit was for recovery of damages based on the breach of a written contract. The amount of appellant's damages cannot be ascertained on the basis of the liquidated damage clause because it has been construed as a penalty provision. However, the contract in question ended August 31, 1977, and the actual damages were found by the jury and were ascertained in the damage issue as a definite sum as of September 1, 1977, less the conversion offset admitted by appellant. We hold that appellant was entitled to recover 6% pre-judgment interest under Article 5069–1.03 on the sum of $10,189.72 from October 1, 1977, pursuant to the thirty day provision of that statute to date of judgment on June 9, 1980.

Appellee asserts ten cross-points of error. In his first two cross-points, he argues the evidence conclusively showed as a matter of law that Butler Drilling Corporation did not assume or ratify the contract, or that the jury finding to special issue number one was so against the great weight and preponderance of the evidence as to be manifestly unjust. The contract in question indicates it was signed and notarized on August 24, 1974, during which period of time negotiations were being had for purchase of the assets of Butler Drilling Company. It was signed by Duncan Butler, President of Butler Drilling Company, who also was president of the successor corporation, Butler Drilling Corporation. There was evidence the contract in question was listed as an asset of Butler Drilling Company when the assets were sold and the successor corporation Butler Drilling Corporation acquired them. The attorney for the purchaser discussed the contract with Mr. McClain, Vice-President of Butler Drilling Company, who also later became vice-president of the successor corporation, and the attorney testified Mr. McClain told him the contract was oral. Butler Drilling Corpora-

tion abided by and operated under the contract for a year from October 1, 1974, to October 24, 1975, when it terminated the contract. In addition, a letter from Mr. McClain was in evidence which referred to the written contract while he was acting as vice-president of Butler Drilling Corporation. Appellant contends that Duncan Butler actually signed the contract sometime after August 24, 1974, and that Butler Drilling Corporation thought the contract was an oral month to month arrangement rather than a written contract. While the evidence is conflicting, we find there was sufficient evidence to support the jury answer to special issue number one and said answer was not against the great weight and preponderance of evidence. Appellee's first and second cross-points are overruled.

In its cross-points three and four, appellee contends the evidence conclusively showed as a matter of law that Duncan Butler did not have authority to sign the contract on behalf of Butler Drilling Company, or that the jury answer to special issue number five to such effect was so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellee contends there is no authority shown because the charter, by-laws and corporate minutes do not reflect the granting of any authority and the contract in question is not a matter in the ordinary and usual course of company business indicating inherent apparent authority. The special issue included both actual and apparent authority. The only Board of Directors for the company was Joe K. Butler, chairman of the Board; Duncan Butler, President; and Lee McClain, Vice-President. Joe K. Butler testified that he instructed Duncan Butler and Lee McClain to negotiate a contract with appellant. The by-laws of the corporation provide the President has the power to employ and discharge all employees and agents for the company. Both Butler Drilling Company and Butler Drilling Corporation operated and acted under the contract for more than a year, which provided for maintenance of the company's radio equipment, an activity

in the every day operation of the company. This was the same activity which had been carried on by appellant for Butler Drilling Company on a month to month oral basis for nine to ten years prior to the date of the written contract. Appellee's cross-points three and four are overruled.

■ In its fifth and sixth cross-points, appellee says the evidence conclusively shows as a matter of law appellant is judicially estopped from claiming unlawful termination by reason of testimony given in another lawsuit where he stated he quit, or that the answer by the jury to special issue number three that plaintiff was terminated is so against the great weight and preponderance of the evidence as to be manifestly unjust because of this prior testimony of plaintiff. While appellant appeared to make conflicting statements as to whether he quit or was terminated, he later explained the discrepancy. He said he was confused and thought he was being asked about the other corporation, not Butler Drilling Corp., and equivocated on the earlier testimony that he quit. One of the requirements for application of the doctrine of judicial estoppel is that the statement must be deliberate, clear and unequivocal. *American Savings and Loan Association of Houston v. Musick*, 531 S.W.2d 581, 589 (Tex.1975). The elements related to judicial estoppel are not shown conclusively or by the overwhelming weight and preponderance of the evidence, and we believe the question went to the weight of the evidence. Further, no one contended appellant quit at the instant trial. Both parties to the instant trial agreed appellant was terminated by appellee. The contested issue was whether the termination was with or without good cause. Appellee's cross-points five and six are overruled.

■ Appellee's cross-points seven and eight assert that as a matter of law appellant converted property of the value of $6420.28, rather than the $4300.00 awarded by the court, and that by the great weight and preponderance of evidence, the jury should have answered $6420.28 to the conversion issue in special issue number thir-teen. One of the items of conversion was a General Electric base station radio for which appellee had paid appellant but had never received. Appellant admitted by pleading and evidence this conversion of payment and this was the item which the trial court offset against the damages awarded appellant when the court disregarded the jury answer to special issue number thirteen. The other items contended by appellant to establish conversion as a matter of law or by the overwhelming weight and preponderance of the evidence relate to evidence of appellee's padding of an expense account of $100.00 per month for approximately ten (10) months and the removal of two A.C. and D.C. test stands by appellant valued at $600.00 each. The burden of proof on the issue was on appellee and from a review of the evidence we do not believe conversion or the specific amounts claimed were established as a matter of law or by an overwhelming weight and preponderance of the evidence. We overrule appellee's seventh and eighth cross-points.

■ Appellee's final two cross-points of error assert the evidence conclusively established as a matter of law appellant was terminated for good cause and that special issue number four should not have been submitted to the jury, or else the jury's answer thereto should have been disregarded. Further, appellee contends that the jury finding to special issue number four was so against the great weight and preponderance of evidence as to be manifestly unjust. The evidence was in conflict on the question but in our view it does not show as a matter of law or by the great weight and preponderance of the evidence that appellant was terminated for good cause due to alleged insubordination and misconduct. Appellee's cross-points nine and ten are overruled.

The judgment of the trial court is reformed to provide for six percent prejudgment interest on the sum of $10,189.72 from October 1, 1977, to date of judgment on June 9, 1980 with post judgment interest as provided by law. The judgment of the trial court is otherwise affirmed.