VERSAILLES, INC., Appellant,

v.

QUADRANT, INC., Appellee.

No. B14–85–511–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 31, 1986.

show benefits received and balance them against benefits given.

Kris Thomas, Barry Snowden, Houston, for appellant.

William K. Andrews, David S. Lynch, Houston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

Versailles, Inc. appeals a judgment rendered on a unanimous jury verdict awarding $50,000 earnest money to Quadrant, Inc. We affirm the judgment of the trial court.

On May 10, 1983, Versailles and Quadrant entered into an earnest money contract whereby Versailles agreed to buy a 35.5 acre tract of land owned by Quadrant. The contract contained eight conditions precedent. It is undisputed that Quadrant satisfied seven of the conditions. The one remaining condition, which required Quadrant to obtain an agreement with Harris County for the construction of an asphalt road on Richmond Avenue, is the subject of this appeal. Versailles contends that five weeks prior to closing, Quadrant's agent notified Versailles that Quadrant would be unable to fulfill the condition at issue. Versailles then requested a mutual termination of the contract, which was refused. Quadrant maintains, however, that it had obtained a satisfactory agreement with the county and was prepared to close on August 2, 1985, as scheduled. Versailles did not attend the closing and subsequently asked that Quadrant release the escrowed earnest money. Quadrant refused to terminate the contract, sued to obtain the funds and Versailles counterclaimed. The case was tried to a jury on one special issue in which the jury found that Quadrant had complied with the disputed condition precedent.

On appeal Versailles argues that there was no evidence or, alternatively, insufficient evidence to support the jury's finding. In addition, Versailles contends that the trial court erred in refusing its proposed special issues and in overruling its objection to Special Issue No. 1.

The condition precedent at issue reads as follows:

8. *Conditions Precedent:* As conditions precedent to this Contract, SELLER agrees prior to closing as follows:

. . .

(f) To furnish an assignable agreement between the SELLER and Harris County, acceptable to PURCHASER, with respect to cost estimates and time for completion, outlining the construction of a two-lane temporary asphalt road upon Richmond Ave., and which agreement shall state the schedule of construction and the maximum amount of asphalt in dollars and quantity, which PURCHASER shall be obligated to supply. At closing the same shall be assigned to PURCHASER, and PURCHASER agrees to perform said agreement.

Richmond Avenue fronts the Quadrant tract Versailles planned to purchase. In May of 1983, when the parties signed the earnest money contract, Richmond had not

yet been paved completely through to Highway 6. Versailles had already obtained a smaller, five-acre tract adjacent to the Quadrant property for a multiple-family development and intended to develop the larger tract into single-family homes. Richmond also fronts the five-acre tract and that segment of the street was paved, while the Quadrant segment was not. Soon after obtaining the property, Quadrant realized that access to it needed to be improved and discussed with Harris County officials the completion of Richmond from Synott Road on the east to Highway 6 on the west. By letter of May 9, 1983, a county engineer advised Norman Ganslen, Quadrant's broker, that the county was willing to participate in the cost of constructing a bridge on Richmond over a flood control ditch. This participation was subject to the property owners' building Richmond from the bridge to the eastern boundary of the Quadrant tract and providing all materials, necessary pipeline adjustments and any other costs to extend an asphalt road from that eastern boundary across a piece of property referred to as the Frost Tract. The county also agreed to participate in the labor to construct the latter extension.

Following the signing of the earnest money contract, Quadrant continued its discussions with both the county and Bill Palmer, president of Versailles, in an effort to satisfy condition 8(f). On July 20, 1983, the county engineer sent a letter (initially drafted by Mr. Ganslen) finalizing the terms of the Richmond construction and requesting a signed acceptance of the agreement. In the letter the county agreed to complete the paving of Richmond across the Frost Tract within 90 days of the paving of the other section and the finalizing of an agreement between the county and the benefiting landowners for construction of the bridge. The county estimated ("with a reasonable degree of accuracy") the maximum cost of the asphalt paving and pipeline adjustments at $45,000, based upon the county's providing the labor. Quadrant's attempts to communicate this agreement to Mr. Palmer, how-

ever, were unsuccessful. Based on a June 22nd letter from Norm Ganslen, reiterating Quadrant's efforts to satisfy condition 8(f), Versailles decided the results were unacceptable and on July 15 requested mutual termination of the contract. Quadrant advised Versailles the day prior to closing that any costs of roads or bridges not anticipated by the earnest money contract would be paid by Quadrant. Quadrant further advised Versailles the closing would take place as scheduled *and* that condition 8(f) would be complied with at closing. Versailles, however, refused to attend the closing and thereby breached its part of the contract.

■ Versailles' first argument on appeal (points of error one through four) is that there was no evidence or, alternatively, insufficient evidence to support the jury's finding that Quadrant complied with the condition precedent. When reviewing a "no evidence" challenge, the appellate court must consider only that evidence, and reasonable inferences therefrom, which viewed in its most favorable light supports the jury finding, and it must disregard all evidence or reasonable inferences to the contrary. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex.1981). "If that evidence is so weak as to do no more than create a mere surmise or suspicion of the existence of the vital facts, then the trial court's judgment must be reversed. Otherwise, sufficient evidence exists, and the trial court's judgment must be affirmed." *Bormaster v. Henderson*, 624 S.W.2d 655, 659–60 (Tex.App.—Houston [14th Dist.] 1981, no writ). When reviewing a factual insufficiency challenge, however, the court must consider all of the evidence and only sustain the point of error if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming as to be against the great weight and preponderance of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Versailles' argument as to the lack of or insufficiency of the evidence is premised on its contention that a condition in a contract

must be fulfilled exactly as expressed. *Berman v. Rife*, 644 S.W.2d 574, 576 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.). Versailles maintains that all it wanted was county assistance in paving Richmond adjacent to the Quadrant Tract and, to that end, drafted condition 8(f). The agreement proffered to satisfy that condition instead required Versailles not only to pave that strip, but also to participate in paving another strip and building a bridge. Quadrant, on the other hand, argues that under a strict compliance standard the record contains sufficient probative evidence to support the jury's finding that Quadrant complied with condition 8(f).

We must agree with Quadrant. Condition 8(f) required Quadrant to obtain an acceptable agreement from the county for the construction of a two-lane temporary asphalt road *upon Richmond Avenue* with a schedule of construction and the maximum amount of asphalt, in dollars and quantity, to be supplied by Versailles. Versailles drafted the contract, including this provision, and if there is a dispute as to what it meant, then the dispute must be resolved against Versailles. *Bethel v. Butler Drilling Co.*, 635 S.W.2d 834, 838 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Upon which portion of Richmond the road was to be located and any other matters incidental to the construction, such as costs and schedules, were presumably clarified in the meetings between the parties' representatives. Four men testified at the trial: Quadrant's president, James M. Keegan, Jr.; its broker, Mr. Ganslen; Versailles' president, Bill Palmer; and its development business manager, Michael Shannon. The transcript is replete with evidence that taken in its most favorable light supports the jury finding. Furthermore, it was for the jury, as the finder of fact, to judge the credibility of the witnesses, to weigh their testimony and to resolve the conflicts and inconsistencies in the testimony. *Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). The jury's findings of fact will be sustained on appeal if there is some evidence of probative value to support them and if they are not against the great weight and preponderance of the evidence. *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

Quadrant's witnesses testified that Versailles' primary concern regarding the Richmond construction was access to the new tract and that the section of Richmond Versailles wanted paved was adjacent to the Frost Tract. While the contract does not specify the exact location, Mr. Keegan stated, "It was a clear understanding when we say Richmond Avenue under condition (f) that was referring to the Richmond Avenue across the Frost Tract." Mr. Ganslen, when asked why Versailles needed a paved strip across the Frost Tract, testified that Versailles needed a connection from Synott Road (east of the Quadrant property) to this site because Mr. Palmer felt that his market originated in the numerous apartments east of Synott and Westheimer. Mr. Ganslen understood that Versailles was going to pave the Quadrant strip. Both Mr. Keegan and Mr. Ganslen viewed the paving of the Quadrant strip as a "customary developer obligation" and therefore Versailles' responsibility. Mr. Ganslen testified that the July 20th agreement letter from the county contained everything that Versailles required and therefore satisfied condition 8(f).

Mr. Palmer stated several times during the trial that Versailles had no intention of paving the Frost Tract strip, although "[t]here was so much discussion concerning the entire access to the property that there could have been some verbal discussions concerning any portion of Richmond Avenue, because there [sic] was a concern to Versailles and of concern to Quadrant at the time." It appears that Versailles' marketing strategy involved bringing customers to the site from the west rather than from the east; thus, paving of the Frost strip was not a primary concern. However, Mr. Palmer also emphasized the importance of *access* to the property, including access from Synott Road. "Naturally in a development you try to get all the

access you can, anything accessible. We had access that we could get to. If we could get that access, it would be great." It was this expanded access that Quadrant feels the county agreement supplied. As Mr. Keegan stated, "We were very excited about it because the contract only called for a dead-end road, asphalt road, and we secured a connection between the 35 acres, Highway 6 and Synott Road. So, instead of having a gravel dead end, we had a complete thoroughfare." Clearly, Versailles was getting *more* than it bargained for and at no increase in cost.

Another issue of dispute is the bridge over the flood control ditch to the west of the Quadrant property. Versailles argues that it had no interest in the bridge and that it repeatedly conveyed this to Quadrant. However, the testimony of Quadrant's witnesses suggests at best that Versailles was unsure about participating in its construction. There is no evidence of an absolute refusal to participate until Versailles requested mutual termination of the earnest money contract. In a final effort to get Versailles to the August 2nd closing, Quadrant communicated to Bill Palmer by letter of August 1st (sent by messenger) that Quadrant intended to take all reasonable action necessary to satisfy condition 8(f) immediately prior to closing, *including assumption of Versailles' share of the cost of constructing the bridge.* To that end, Quadrant stood ready at closing to deposit funds in escrow, write a check or establish a line of credit. Since Quadrant agreed to assume *all* costs in connection with the construction of the bridge, there was a benefit flowing to Versailles without an added cost. The bridge was not a part of the condition precedent; however, it resulted only in positive benefits to Versailles. It provided greater access to the Quadrant property than either side had anticipated.

Versailles also objects that the county agreement failed to state a schedule of construction, as well as an absolute maximum cost for the asphalt to be supplied. However, as stated earlier, in its July 29th letter the county agreed to complete the paving of Richmond across the Frost Tract within 90 days of the paving of the Quadrant section and the finalizing of an agreement between the county and the benefiting landowners for construction of the bridge. In addition, the county estimated the maximum cost at $45,000. The jury was free to interpret those statements as satisfying condition 8(f).

Versailles further objects to the fact that Quadrant did not forward the July 20th county agreement to Versailles for acceptance or refusal. Quadrant had inserted language into the contract permitting it, at its option, to require acceptance or rejection of any condition precedent within five days of such a request. Both Quadrant witnesses testified that the purpose of this language was to prevent lengthy delays in compliance and, therefore, to effect an earlier closing if possible. Mr. Keegan stated that he had wanted to close prior to August 2nd, and it was agreed that if Quadrant performed all of the conditions precedent, closing could take place ten days later if that date were prior to August 2nd. After Versailles attempted to terminate the contract and Mr. Keegan was unable to reach Mr. Palmer by phone to discuss their problems, it became clear that there was to be no early closing; thus, there was no longer any need to tender performance.

In sum, we find sufficient evidence to support the jury's finding that Quadrant complied with condition precedent 8(f). Accordingly, we overrule Versailles' points of error one through four.

■ In its fifth and sixth points of error, Versailles complains that the trial court erred in refusing to include its requested special issues in the court's charge and in overruling its objection to the submission of Special Issue No. 1. The special issues which Versailles submitted required the jury to find whether Quadrant had fulfilled *each element* of condition 8(f). Versailles argues that by submitting only one special issue the jury was permitted to infer incorrectly that compliance with condition 8(f) required merely "substantial

compliance" or a "good faith effort" rather than strict compliance. Under TEX.R. CIV.P. 277 the trial court has the discretion to submit separate questions with respect to each element of a case or to submit issues broadly. *See Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 924 (Tex.1981). This trial court chose to submit a broad issue and, therefore, asked the jury to determine solely whether Quadrant complied with condition 8(f).

Special Issue No. 1 read as follows: "Do you find from a preponderance of the evidence that Quadrant, Inc., complied with Section 8(f) of the contract (Plaintiff's Exhibit 2)?" Versailles objected because it did not read as follows: "Do you find from a preponderance of the evidence that Quadrant, Inc., complied *in all respects* with Section 8(f) of the contract (Plaintiff's Exhibit 2)?" We find no significant distinction between the two phrasings. A case will not be reversed where the trial court has failed to submit other and various phases or different shades of the same issue. *Citizens State Bank of Dickinson v. Bowles,* 663 S.W.2d 845, 851 (Tex.App.— Houston [14th Dist.] 1983, writ dism'd w.o. j.). We thus overrule Versailles' fifth and sixth points of error and affirm the judgment of the trial court.