James K. PRESNAL and Ruth Presnal, Individually and as Trustees for Forest D. Cook, Carol Ann Lemon, and James K. Presnal, Jr., Appellants,

v.

TLL ENERGY CORPORATION, Appellee.

No. 01–88–00911–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 22, 1990.

Rehearing Denied April 26, 1990.

Lin L. Blasit, Austin, for appellants.

Jon Miller, Bryan, for appellee.

Before SAM BASS, MIRABAL and COHEN, JJ.

## OPINION

COHEN, Justice.

The questions presented by this class of contracts (for liquidated damages) are a fruitful source of litigation, and are usually difficult to be determined.

*Eakin v. Scott*, 70 Tex. 442, 444, 7 S.W. 777, 778 (1888).

We find that the decisions of the various courts of civil appeals in this state upon this question (when liquidated damage clauses are enforceable) are hopelessly irreconcilable, and after as full an investigation as we have been able to make of the holdings by our Supreme Court the correct rule to be announced in ˙ this case is in considerable doubt....

*Bourland v. Huffhines*, 244 S.W. 847, 849 (Tex.Civ.App.—Amarillo 1922, writ dism'd).

Volumes have been written on the question of when a stipulated damage provision of a contract should be enforced as liquidated damages and when enforcement should be denied because it is a penalty provision. One line of cases ... states that the intention of the parties governs and another line states that their intention is immaterial....

*Stewart v. Basey*, 150 Tex. 666, 669, 245 S.W.2d 484, 485–86 (1952).

Cautioned by a century of warnings from our judicial ancestors, we must decide whether the trial judge correctly granted summary judgment because a liquidated damage clause was, as a matter of law, an unenforceable penalty.

On April 15, 1983, appellants ("the Presnals") leased 115 acres of land in Brazos County to Macho Energy, Inc. The lease was assigned to McMurrey Petroleum, Inc., which drilled a well after the property was pooled to comprise a 160 acre spacing unit, as then prescribed by the Texas Railroad Commission. That well yielded royalties of $8,694 to the Presnals. The lease was then assigned to appellee ("TLL"), its present owner.

The Presnals sued TLL, claiming it was bound to drill a second well, which it never did, or pay $75,000 liquidated damages. The lease provided that if the Railroad Commission changed its rules during the lease to allow an 80 acre unit, the lessee had to drill a second well within 45 days or pay liquidated damages:

**Paragraph 18:** Notwithstanding anything to the contrary, it is understood and agreed that *Lessee will drill the maximum number of wells allowable for the acreage herein conveyed* but in no event less than one well. The right to pool as provided in paragraph 5 shall apply only to the acreage remaining after Lessee has complied with the drilling requirements of the first sentence of this paragraph. It is understood however that *at present time the field rule which applies to the herein described premises provides for units of 160 acres* and Lessor hereby consents to a pooling of the leased premises with such additional acreage necessary to make up a unit not to exceed 160 acres; provided however all of the acres of Lessor must be included in such unit. Further *in the event the field rules should change to allow a unit of 80 acres then in such event Lessee shall have 45 days* from the effective date of Texas Railroad Commission's order establishing such field rule to *commence drilling another well* on the herein leased premises and *failure of Lessee to so commence drilling shall terminate this lease* as to such 80 acres of the leased premises *and paragraph 42 hereof shall apply to the Lessee's failure to commence drilling.*

\* \* \* \* \* \*

**Paragraph 42:** *Failure of Lessee or Lessee's assigns* hereunder *to commence drilling hereunder within the lease period shall entitle Lessor to recover* from Lessee and any assignees hereunder, *as liquidated damages the sum of $75,-000.00* plus all attorneys fees and costs which Lessor may incur in connection therewith.

(Emphasis added.)

The Presnals contend the Railroad Commission changed its rules in October 1983 to allow 80 acre units, but TLL has refused either to drill a well or to pay the liquidated damages. Both parties moved for summary judgment, but the Presnals withdrew their motion, and the trial judge granted TLL's motion. The sole basis for recovery in the Presnals' petition was the liquidated damage clause (paragraph 42, quoted above), and the sole basis for TLL's summary judgment was that the liquidated damage clause was unenforceable because it was a penalty.

■ In points of error one through five and seven through nine, the Presnals contend the court erred in granting summary judgment. As the movant, TLL had the burden to prove that the clause was a penalty, as a matter of law. In reviewing a summary judgment, we take all evidence favorable to the Presnals as true, and we give the Presnals the benefit of all reasonable inferences. *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex.1975).

For summary judgment proof, TLL relied primarily upon James K. Presnal's deposition testimony. Presnal, an attorney, was approached by Macho Energy's representative, Joel Guidry, concerning a lease. Presnal prepared a lease and sent it to Guidry. When Guidry stated the acreage for a unit might soon be reduced to 80 acres, Presnal suggested adding language in paragraph 18 to require a second well, if that occurred, and to provide for liquidated damages if none were drilled. Paragraph 42 was the same in the rough draft and in the final lease, although it originally would have applied only to a failure to drill the first well. Presnal prepared the original proposal and the final lease.

The final lease resulted after further conferences between Guidry and Presnal. They were the only negotiators, and neither Guidry nor any representative of Macho Energy testified or gave affidavits. Presnal and Guidry discussed the fact that liquidated damages would be due if the second well became required but was not drilled. Presnal wanted to get money from production quickly, he considered that a dry hole might be drilled, and he knew that

the lessee might have a duty to drill a second well, even though the first did not produce. Presnal did not know if either well would produce, but he knew that liquidated damages would apply to a failure to drill a first or a second well, and he knew a liquidated damage clause was unenforceable if it was a penalty.

Presnal testified he did not want to pool his property, but did so in exchange for the provision requiring a second well if the field rule changed. If a required well was not drilled, Presnal wanted compensation for lost revenues, for his time in negotiations, for the falling price of oil, and for the reduced value of his lease if it became less attractive to oil companies after drilling had been done in the immediate vicinity. Presnal calculated the liquidated damage amount by estimating lost production during the time he anticipated would be necessary to get a new lease, and he based his figure on information from leases owned by his relatives, plus his general knowledge of market activity at the time.

After TLL refused to drill the second well, Presnal wrote to TLL that it was obligated to pay "the failure to drill penalty in the amount of $75,000.00." Presnal also filed two affidavits in the trial court referring to paragraph 42, the liquidated damages provision, as a "failure to drill penalty."

TLL also offered the affidavit of its president, Thomas Latimer, an experienced petroleum engineer. He swore:

I have analyzed the engineering and geological data of the areas surrounding and including the James K. Presnal Unit No. 1. In my opinion, a second well drilled to the east of the James K. Presnal Unit No. 1 well, either on the James K. Presnal lease or on the 160 acres James K. Presnal Unit No. 1 would not be reasonably productive of oil. It is my opinion that such second well would either be totally unproductive or would only produce a small amount of oil, but in no event would it produce more oil than was

produced from the Well No. 1 on the James K. Presnal Unit.

If a second well had been drilled and completed, in all likelihood it would have resulted in less royalty income to Mr. Presnal than he received from the first well [$8,694].

The parties have cited numerous authorities, some upholding liquidated damage clauses and some invalidating them. Reading them shows that the statements our courts made in 1888, 1922, and 1954 are still true.

We note that TLL has not cited a case affirming a summary judgment that a liquidated damage provision was a penalty as a matter of law. *Compare American Lease Plan v. Ben–Kro Corp.*, 508 S.W.2d 937 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (reversing a summary judgment that awarded liquidated damages); *Mayfield v. Hicks*, 575 S.W.2d 571 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.) (reversing an instructed verdict that awarded liquidated damages). TLL's authorities holding such provisions to be unenforceable penalties did so after a trial before a judge or a jury.

TLL relies heavily upon *Stewart v. Basey*, 150 Tex. at 666, 245 S.W.2d at 484, the leading Texas case on liquidated damages. *Stewart* is distinguishable for several reasons. The most important is that the contract in *Stewart* required payment of liquidated damages upon breach of any of its provisions, even trivial ones that caused damage much less than the stipulated amount. Stewart, the landlord, appealed from the refusal of both lower courts to award $7,350.00 in liquidated damages, where his actual damages were $38.50, a ratio of 190 to 1.[1] Quoting the Restatement of Contracts and other authorities, the court wrote:

Contracts are frequently made in which performance of very different degrees of importance and value are promised and one large sum of money is made payable as damages for any breach what-

---

1. The tenant paid rent for the first 11 months of a 60 month lease, which provided stipulated damages of $150 per month for each month of unpaid rent, leaving a total of 49 months of rent unpaid ($150 × 49 months = $7350). *See* 245 S.W.2d at 485.

ever. Since *such a contract promises the same reparation for the breach of a trivial or comparatively unimportant stipulation as for the breach of the most important one or of the whole contract,* it is obvious that the parties have not adhered to the rule of just compensation. In this matter *neither the intention of the parties nor their expression of intention is the governing consideration. The payment promised may be a penalty, though described expressly as liquidated damages, and vice versa.*

\* \* \* \* \* \*

Where the agreement contains several matters of different degrees of importance, and yet the sum named is payable for the breach of *any, even the least ...* the sum stipulated to be paid has been treated as a penalty.

245 S.W.2d at 486–87. (Emphasis added.)

Referring to the particular contract before it, the court wrote:

When that rule is applied to the provisions in the contract before us it seems clear that the stipulation should be construed as a provision for penalty and not for liquidated damages.... It provides that for the failure of the lessee to pay any installment of rent when due *or for his breach of any other obligation* of the contract, the lessors could, at their option, terminate the lease.

245 S.W.2d at 487. (Emphasis added.) The court would not allow liquidated damages in *Stewart* even though the tenant's breach was the failure to pay rent, the essence of the lease.

The court then made a statement significant to the present case:

It is not necessary for us to decide whether petitioners would have been entitled to liquidated damages had the lease contract contained no covenant except the covenant to pay rent, and we there-

fore pass that question by without discussion.

*Id.*

The court held:

Our conclusion is that, since the contract provided the same reparation for the breach of *each and every* covenant, and since it would be unreasonable and a violation of the principal of just compensation to enforce it as to *some* of them, the provision for stipulated damages should be treated as a penalty.

*Id.* (Emphasis added.)

TLL does not contend that this lease bound it to pay liquidated damages for breaching trivial covenants. Paragraphs 18 and 42 provide liquidated damages only for failure to drill, a covenant of paramount importance. TLL contends simply that $75,000 is too much to pay as damages for not drilling this particular well. This case, therefore, presents the issue that the court refused to decide in *Stewart v. Basey,* whether a liquidated damages clause is valid if it applies only to the most important covenant in the lease. Here, the duty to drill is as important as the duty to pay rent was in *Stewart.*[2]

*Stewart v. Basey* established a rule that would allow liquidated damages in some cases:

Restatement of Contracts, Sec. 339, accurately expresses the rule as follows: (1) An agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

245 S.W.2d at 486.

■ In *Stewart,* the landlord's damages were lost rentals for a fixed time, which could have been easily and accurately esti-

---

**2.** The *Stewart* court reserved for decision the situation where "the lease contract contained no covenant except the covenant to pay rent...." While TLL may be bound by several covenants, failure to drill is the only one that triggers the liquidated damages clause. We view this the same as a lease containing no covenant except the covenant to pay rent.

mated by simple arithmetic when the contract was made. However, no summary judgment proof here showed that production from this property could have been accurately estimated without difficulty when this lease was made on April 15, 1983. TLL's affidavit only states Latimer's opinion of the well's value as of June 16, 1988; no summary judgment evidence shows what value Macho Energy or Joel Guidry put on the well when they made the contract, April 15, 1983, which is the critical time. Nor is there evidence that Presnal's $75,000 estimate was unreasonable when made. In determining the reasonableness of stipulated damages, "the amount fixed is deemed to be reasonable when judged ... at the time of the making of the contract, and not at the time of its breach." *Williams v. Beasley*, 300 S.W. 193, 195 (Tex.Civ.App.—Eastland 1927, writ ref'd). TLL presented no evidence that $75,000 was not a reasonable forecast of damages on April 15, 1983, or that damages could have been accurately estimated without difficulty on April 15, 1983. TLL had to disprove one of these propositions conclusively before it was entitled to a summary judgment. *Stewart v. Basey*, 245 S.W.2d at 486. *Compare Tri–Cities Constr., Inc. v. American Nat'l Ins. Co.*, 523 S.W.2d 426, 428 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ) (summary judgment awarding liquidated damages reversed because the beneficiary did not prove that stipulated amount was "a reasonable forecast of just compensation" when contract was executed).

"The uncertainty of finding oil, the vicissitudes of drilling and production, the whimsical tracts of wells after being brought in, are common knowledge. All of these make such a contract highly speculative in its nature. It is generally a gamble upon the fickle wheel of fortune." *Logan v. Elliott*, 61 S.W.2d 157, 159 (Tex.Civ.App.—Fort Worth 1933, writ dism'd). The inherent difficulty of estimating damages resulting from a failure to drill is one reason why landowners would want stipulated damage provisions in their leases and why courts sometimes view them favorably. *See Guardian Trust Co. v. Brothers*, 59

S.W.2d 343, 346 (Tex.Civ.App.—Eastland 1933, writ ref'd) (suggesting liquidated damage clause as a solution to the inherent difficulty of estimating the worth of an oil lease); *Cresswell v. Dixie Company*, 6 S.W.2d 380, 382–83 (Tex.Civ.App.—Eastland 1928, writ dism'd) (rendering judgment on appeal for liquidated damages for failure to drill). *See generally Magruder v. Poulton*, 257 S.W. 533 (Tex.Comm'n App.1924, judgm't adopted); *American Nat'l Ins. Co. v. Tri–Cities Constr., Inc.*, 551 S.W.2d 106, 109 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ) ("A finding of actual damage is only material to the reasonableness of the parties' forecast of possible harm. The mere fact that stipulated damages are in excess of actual damages does not prevent the stipulation from being lawful."); *Zucht v. Stewart Title Guar. Co.*, 207 S.W.2d 414, 419 (Tex.Civ.App.—San Antonio 1947, writ dism'd); *Pace v. Olvey*, 282 S.W. 940, 942 (Tex.Civ.App.—Amarillo 1926, writ dism'd).

We hold that TLL did not conclusively prove this liquidated damage provision was a penalty. Points of error one through five and seven through nine are sustained.

The judgment is reversed, and the cause is remanded.

SAM BASS, J., dissenting.

SAM BASS, Justice, dissenting.

I respectfully dissent.

The question of when a stipulated damage provision of a contract should be enforced as liquidated damages, and when enforcement should be denied because it is a penalty provision, was answered in *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484 (1952). The Texas Supreme Court held that in order to enforce a liquidated damage clause, the court must find: (1) that the harm caused by the breach is incapable or difficult of estimation; and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation. The court emphasized that damages, to be enforceable as liquidated damages, must be uncertain and the stipulation must be reasonable. *Stewart*, 150 Tex. at 670, 245

S.W.2d at 486. "The payment promised may be a penalty, though described expressly as liquidated damages, and vice versa." *Stewart*, 150 Tex. at 670, 245 S.W.2d at 486. In the instant case, the movant urged, and the trial court correctly found, that as a matter of law the second element required to enforce a liquidated damages clause was conclusively established against the nonmovant.

The issue of the enforceability of liquidated damages in any given case is one of law for the court to decide. *Lefevere v. Sears*, 629 S.W.2d 768, 771 (Tex.Civ.App.— El Paso 1981, no writ); *Mayfield v. Hicks*, 575 S.W.2d 571, 576 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.); *Muller v. Light*, 538 S.W.2d 487, 488 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.). The inclination of the courts is to construe the amount named as a penalty, and where there is doubt, it will be resolved in favor of a penalty. *See Bethel v. Butler Drilling Co.*, 635 S.W.2d 834, 839 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). By conclusively establishing one element of the plaintiff's cause of action on the liquidated damages clause against the plaintiff (Presnal), the defendant-movant (TLL) established the affirmative defense of penalty. The burden then shifted to the nonmovant (Presnal) to prove that it was the intention of the parties in making the contract to provide for liquidated damages, and not a penalty. *Stewart v. Basey*, 241 S.W.2d 353, 356 (Tex.Civ.App.—Austin 1951), *aff'd*, 150 Tex. 666, 245 S.W.2d 484 (1952); *Sanders Nursery Co. v. J.C. Engelman, Inc.*, 109 S.W.2d 1131, 1133 (Tex.Civ.App.—San Antonio 1937, writ dism'd).

The summary judgment proof does not show that the provision was actually intended by the parties to constitute an estimate or forecast by them of the damages that actually would be sustained by the Presnals in case of a breach by TLL. There were no negotiations regarding the $75,000 figure. Presnal contends the "liquidated damage" provision was in consideration for the pooling provision included in the second draft of the lease agreement (paragraph 18). However, the original rough draft of the lease, as well as the final lease agreed upon after inclusion of the pooling provision, both contain paragraph 42. The same $75,000 payment was to be made in the event of the failure to drill the first well and the failure to drill a second, if required. By Presnal's own testimony, if a duty to drill a second well arose, then appellee could either gamble and drill a second well, or appellee "could pay the $75,000.00 and walk." In addition, Presnal filed two affidavits with the trial court that referred to the liquidated damages provision (paragraph 42) as "the failure to drill *penalty* in the lease." (Emphasis added.) Finally, Thomas Lattimer, president and sole shareholder of TLL, stated by affidavit that the second well, if drilled, would have been nonproductive, or at best, no more productive than the first well which netted only $9,000 in royalty. It is clear the parties to the lease did not make a good faith effort to arrive at a genuine pre-estimate of the damages that would flow from any particular breach.

The figure of $75,000 was chosen not as an estimation of any damages to be suffered by the Presnals, but as an amount designed only to induce prompt completion of a second well.

The amount so fixed is not a reasonable forecast of just compensation for the harm that is caused by the breach. Since the correct measure of damages for breach of duty to drill a well is the lost royalty, it was incumbent on the parties to make a reasonable forecast of what royalties would be lost in the event the second well was not drilled, which appellants did not do.

It is a question of law whether paragraph 42 is a valid liquidated damages clause or is a penalty. The question is whether the parties to the lease actually intended the $75,000 figure to be an estimate by them of the damages that would actually be sustained, or whether the figure was meant to secure performance under the lease. It is undisputed that each and every term of the lease was written by James K. Presnal. Because Presnal authored the lease, any ambiguity or doubt arising from the language used is to be

construed against him. *Bethel v. Butler Drilling Co.*, 635 S.W.2d at 838. Additionally, where there is doubt with regard to whether a provision is a true liquidated damage clause or a penalty, it will be resolved in favor of a penalty. *Id.*

I construe the language employed in the contract to be a penalty as a matter of law.

We should overrule appellants' first nine points of error.

Because I believe we should overrule the first nine points of error, we should also address appellants' tenth point of error.

Appellants assert in their tenth point of error that the trial court erred in granting TLL's protective order denying an in camera inspection of defendant's title examination report of the leased property. On or about May 12, 1988, appellants filed a supplemental request for production, requesting "any and all title opinions or title examinations pertaining to said Presnal lease." Appellee filed its motion for protective order on the basis that the requested documents were an invasion of appellee's property rights and were irrelevant to the issue at hand; i.e., whether paragraph 42 of the lease is a liquidated damage clause or a penalty. Texas Rule of Civil Procedure 166b(4) expressly provides that:

> When a party seeks to exclude documents from discovery and the basis for objection is undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights, rather than a specific immunity or exemption, it is not necessary for the court to conduct an inspection of the individual documents before ruling on the objection.

TLL did not claim a specific immunity or exemption, but instead alleged irrelevancy and an invasion of property rights. The trial judge acted in conformity with rule 166b(4) and did not abuse her discretion in refusing to conduct an in camera inspection. *Hoffman v. Fifth Court of Appeals*, 756 S.W.2d 723, 723 (Tex.1988).

Appellants' tenth point of error should be overruled.

I would, therefore, affirm the judgment of the trial court.