PLAINVIEW INDEPENDENT SCHOOL DISTRICT and the State of Texas and Hale County, Appellants,

v.

EDMONSON WHEAT GROWERS, INC., Appellee.

No. 07–83–0057–CV.

Court of Appeals of Texas, Amarillo.

Nov. 21, 1984.

Rehearing Denied Dec. 12, 1984.

Rudd F. Owen, Day, Owen, Lyle, Voss & Owen, Plainview, for appellants.

John Thomas Boyd, Jr., Morehead, Sharp & Tisdel, Plainview, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Plainview Independent School District, the State of Texas and Hale County appeal from a take-nothing summary judgment denying them recovery from Edmonson Wheat Growers, Inc., a cooperative marketing association, of ad valorem taxes they assessed on grain in the association's elevators. For the reason that the summary judgment proof conclusively established the nontaxable nature of the grain, and the taxing authorities raised no material fact issue with respect thereto, we affirm.

For tax purposes, in the years 1977 and 1978 the association rendered to the School District, and in 1978 it rendered to the State and to Hale County, the grain in its elevators. The school district levied taxes on the grain for the year 1977, all of the taxing authorities levied taxes on the grain for the years 1978 through 1981 and, upon the association's nonpayment, the School District instituted this action, in which the State and Hale County intervened, to recover the amounts of taxes claimed to be delinquent. The association affirmatively interposed the defenses of nonownership of the grain and its exemption from taxation. All parties moved for summary judgment; the court denied the taxing authorities' motions, granted the association's motion, and rendered judgment that the taxing authorities take nothing.

The contentions expressed by the taxing authorities in the first three of their four points of error are that the summary judgment evidence conclusively establishes that the association owned the grain against which the delinquent taxes were assessed, and that the evidence does not conclusively establish the association's defense to or an exemption from the grain's taxation. In response, the association maintains that it does not own the grain, which is nontaxable by virtue of article 8, section 19, of the Texas Constitution and section 11.16 of the Texas Tax Code Annotated (Vernon 1982), which exempt farm products "in the hands of the producer" from taxation.

The taxing authorities correctly state that when they introduced copies of the delinquent tax records, certified by the proper taxing authorities to be true and correct with the amounts stated thereon to be unpaid, they established a prima facie case as to every material fact necessary to their respective causes of action. *Davis v. City of Austin*, 632 S.W.2d 331, 333 (Tex. 1982). At that point, the association, to avoid the tax liability, assumed the burden of conclusively proving every element of its affirmative defense, *Alamo Barge Lines, Inc. v. City of Houston*, 453 S.W.2d 132, 134 (Tex.1970); *Plantation Foods, Inc. v. City of Dallas*, 437 S.W.2d 396, 398 (Tex. Civ.App.—Dallas 1969, writ ref'd n.r.e.), to be entitled to summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

The summary judgment evidence establishes without dispute that the association is a nonprofit cooperative association incorporated under the Cooperative Marketing Act, Tex.Rev.Civ.Stat.Ann. art. 5737 *et seq.* (Vernon 1958), and as thereafter amended, which Act has been reenacted as the Cooperative Marketing Associations Act. Tex. Agric.Code Ann. § 52.001 *et seq.* (Vernon 1982 & Supp.1984). The purpose of the association as set forth in its articles of incorporation is "to engage in any activity in connection with the marketing or selling of agricultural products of its members ...." The bylaws provide that the patrons of the association, by dealing with the association, acknowledge that the terms and provisions of the articles of incorporation and the bylaws shall constitute a contract between the association and the patron, as if the patron had signed a separate instrument containing said terms and conditions.

Other than the articles of incorporation and bylaws, there are no written agreements between the association and its members. The articles of incorporation meet the requirements of the Agriculture Code's section 52.034 for the organizational structure of the association, and the bylaws contain the suggested provisions set forth in the following section 52.052.

Don Ketchum, the manager and assistant secretary-treasurer of the association, explained that when a farmer brings his product to the association he has three options: he may 1) receive a warehouse receipt; 2) leave the product in open storage and receive a weight ticket; or 3) deliver the grain for marketing and receive an advance in money, which is the current market price less the amount anticipated for expenses. If the farmer receives a warehouse receipt or a weight ticket, he retains complete control over the grain and may store it until he decides to sell it, at which time he is charged both a storage fee and an "in and out charge." If the farmer delivers the grain for marketing and receives an advance, he loses control over the grain, but he is charged a storage fee until the association sells the grain at the time and price it determines.

The grain for which the farmer receives an advance is recorded in the association's books as "cash grain" and grain which is otherwise stored is recorded as "warehouse receipt grain." However, all of the grain is comingled, and the commodities held by the association are insured under a casualty insurance policy with the association listed as the insured. The farmers who have sold their grain through the association are entitled, at the close of the fiscal year, to receive their proportionate share of the net savings from the grain merchandising from the association. Likewise, if there is a loss the farmer is liable for the loss and the association may cancel or extinguish any preferred stock and/or book credits of the farmer, set up an account receivable to recoup the loss, or diminish dividends and distributions from net income in the ensuing five years.

The taxing authorities take the position that the cash grain is grain which is sold by the farmers to the association and, therefore, it is not in the hands of the producer-member, but is owned by the association and subject to ad valorem taxes. The position that the grain was sold is validated, the taxing authorities argue, by the holding in *Texas Farm Bureau Cotton Ass'n v. Stovall*, 113 Tex. 273, 253 S.W. 1101 (1923), that a marketing agreement entered into by a cotton producer and a cotton growers cooperative association was a contract for sale and purchase of the producer's cotton and not an agency contract. *Id.* 253 S.W. at 1107.

In *Stovall*, the marketing association sought specific performance of the marketing agreement to compel the cotton producer to deliver his cotton to the association. The question before the court was whether, and the court's definitive holding was that, "the express language of the [marketing] agreement declaring the instrument a contract of sale and purchase ... [is] such a contract in so far [*sic* ] as the parties here are concerned." *Id.*

The question resurfaced a year later in *Texas Certified Cottonseed Breeders' Ass'n v. Aldridge*, 122 Tex. 464, 61 S.W.2d 79 (1933), when the court had to determine, in an association's suit to recover an excessive advance made to a producer member for cottonseed delivered pursuant to a marketing agreement similar to the one in *Stovall*, whether the agreement was a contract of absolute sale or a contract of agency. *Texas Certified Cottonseed Breeders' Ass'n v. Aldridge, supra.* Explaining that by the contract, the title to the commodities is placed in the association to enable it to carry out its purposes—*i.e.*, to be an agent of its members to handle their products, to have the authority to borrow money on the products and to pledge same as security for any obligations, to distribute the money so borrowed equitably among the producers in proportion to the amount they delivered to the association, and to enter bona fide transactions with complete title—the court found that the clear intention of the

contracting parties was to create a true cooperative marketing association, which would be destroyed if it were held that the delivery of the seed to the association was an absolute sale. Consequently, the marketing agreement, albeit clothed in the language of a sale, was not a contract of absolute sale, but constituted the association the agent of its members with broad powers to handle and sell their commodities. *Id.* at 82–83.

Following the rationale of *Aldridge*, the attorney general has held that farm products delivered to a cooperative association, incorporated under the Cooperative Marketing Act, pursuant to a contract for sale and delivery are still farm products in the hands of the producer and nontaxable. Op. Tex.Att'y Gen. No. O–5484 (1943). *Accord,* Op.Tex.Att'y Gen. Nos. M–632 (1970), V–511 (1948), and O–5091 (1943). The attorney general stated in opinion No. O–5484 that the purpose of Article 8, section 19, of the Texas Constitution was to prevent the imposition of a tax on farm products when such tax would bear directly upon the producer, and that this purpose would be defeated if taxes were levied on the goods held by the association because the producers would ultimately bear the burden of taxation.

■ Although the attorney general's opinions are not binding on the courts, they, being rendered in accordance with constitutional authority, have a highly persuasive value. *Vick v. Pioneer Oil Co., Western Division,* 569 S.W.2d 631, 633–34 (Tex.Civ.App.—Amarillo 1978, no writ). We agree with the attorney general's reasoned conclusion that farm products delivered by a producer-member to and held for sale by an association incorporated under the Cooperative Marketing [Associations] Act, though delivered pursuant to the usual marketing agreement for sale and delivery, remain farm products in the hands of the producer and are exempt from taxation. The conclusion has particular application to the undisputed facts in the cause before us since the summary judgment evidence proves compliance with the Cooperative Marketing Associations Act and there is a complete absence of any agreement for, or of any evidence of intent to effect, an absolute sale of the producer members' grain to the cooperative marketing association.

It follows that, on this record, the taxing authorities failed to sustain their burden of proof, the association sustained its burden of proof, and the trial court properly adjudged the grain to be nontaxable. *See Alamo Barge Lines, Inc. v. City of Houston, supra,* at 134. Points of error one through three are overruled.

■ The taxing authorities contend in their last point that the association is estopped to assert nonownership, or the related tax exemption, of the grain because it rendered the grain for tax purposes in 1977 and 1978. In interposing the doctrine of estoppel, the taxing authorities rely on the principle, enunciated in *Pfeiffer v. City of San Antonio,* 195 S.W. 932, 933 (Tex.Civ.App.—San Antonio 1917, writ ref'd), that absent an allegation of non est factum, fraud or mistake, a taxpayer who renders property as his own is bound by his rendition. In response, the association invokes the holding in *Childress County v. Schultz,* 199 S.W.2d 860, 862 (Tex.Civ.App.—Amarillo 1946, no writ), that the doctrine of estoppel does not apply to a taxpayer who renders as his own property that does not belong to him.

It is unnecessary to opt for the application of either of the seemingly contradictory pronouncements baldly declared in *Pfeiffer* and *Shultz,* for, as this cause was developed, estoppel was not evidenced. Having alleged the estoppel, the taxing authorities assumed the burden of proving the essential elements of it, one element of which is that the taxing authorities acted on the association's renditions to their prejudice. *Concord Oil Co. v. Alco Oil and Gas Corp.,* 387 S.W.2d 635, 639 (Tex.1965). The renditions could not change the exempt status of the grain, *Childress County v. Shultz, supra,* and obviously, the taxing authorities could not have acted on the renditions to their detriment since the grain

was exempt from taxation by them. The fourth point is overruled.

The summary judgment rendered by the trial court is affirmed.