**TEXAS WORKERS' COMPENSATION INSURANCE FACILITY,**
Appellant,

v.

**STATE BOARD OF INSURANCE,** Aetna Casualty & Surety Company, Hartford Accident & Indemnity Company, Houston General Insurance Company, Liberty Mutual Fire Insurance Company, United States Fire Insurance Company, Cigna Insurance Company of Texas, Employers Insurance of Wausau, Lumbermens Mutual Casualty Company, and Travelers Indemnity Company of Rhode Island, Appellees.

No. 3–94–122–CV.

Court of Appeals of Texas,
Austin.

Jan. 18, 1995.

Dan Morales, Atty. Gen., Charles B. McDonald, Asst. Atty. Gen., Austin, for State Bd. of Ins.

Eric J. Mayer, Susman Godfrey, L.L.P., Houston, for Aetna Cas. & Sur. Co., David J. Healey, Stephen L. Lundwall, Arnold White & Durkee, Houston, for Hartford Acc. & Indem. Co.

Preston E. Henrichson, Edinburg, for Houston Gen. Ins. Co.

Curtis L. Frisbie, Jr., Gardere & Wynne, L.L.P., Dallas, for Liberty Mut. Fire Ins. Co.

J. Hampton Skelton, Skelton & Associates, Austin, for U.S. Fire Ins. Co.

Bob E. Shannon, Baker & Botts, L.L.P., Austin, for C.I.G.N.A. Ins. Co.

John C. Hart, Cantey & Hanger, Dallas, for Employers Ins. of Wausau.

David L. Orr, Johnson & Gibbs, P.C., Austin, for Lumbermens Mut. Cas. Co.

Ernest R. Higginbotham, Strasburger & Price, L.L.P., Dallas, for Travelers Indem. Co. of R.I.

Before CARROLL, C.J., and JONES and KIDD, JJ.

CARROLL, Chief Justice.

In March 1993, the State Board of Insurance (the "Board") ordered the Texas Workers' Compensation Facility (the "Facility") to indemnify Aetna Casualty & Surety Company, The Hartford Accident & Indemnity Company, Houston General Insurance Company, Liberty Mutual Fire Insurance Company, United States Fire Insurance Company, and Lumbermens Mutual Casualty Company (collectively the "Original Servicing Companies") for legal expenses incurred in defending certain litigation brought by Standard Financial Indemnity Company ("SFIC"). The Facility appealed the Board's orders to the district court, relying on Article 5.76–2, section 2.05(i) of the Texas Insurance Code, which states that the Facility "may not indemnify the servicing companies." Tex.Ins. Code Ann. art. 5.76–2, § 2.05(i) (West Supp. 1995). The Original Servicing Companies along with Cigna Insurance Company of Texas, Travelers Indemnity Company of Rhode

Jane Webre, Scott Douglass & Luton, L.L.P., Austin, for appellant.

Island, and Employers Insurance of Wausau (collectively the "Servicing Companies") intervened in the proceeding. The district court affirmed the Board's orders in all respects and ordered the Facility to indemnify the Servicing Companies for expenses incurred in the defense of the SFIC litigation. We will affirm the trial-court judgment.

## BACKGROUND

The legislature created the Texas Workers' Compensation Assigned Risk Pool (the "Pool") to provide an unincorporated association of insurers authorized to issue insurance policies to high-risk insureds under the Texas Workers' Compensation Act and other workers' compensation statutes. Act of May 14, 1953, 53d Leg., R.S., ch. 279, 1953 Tex. Gen.Laws 716, *repealed by* Act of Dec. 11, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(21), (22), 1989 Tex.Gen.Laws 1, 114. In the 1970s and 1980s, the Servicing Companies entered into servicing company contracts with the Pool, the predecessor of the Facility, promising to issue policies to employers who could not obtain workers' compensation insurance in the voluntary market. In consideration for this promise, the Pool promised to pay each carrier a fee and to "indemnify Carrier as set out in the Pool's By–Laws and Rules and Regulations." Article VI, paragraph 3 of the Pool's bylaws provided:

> *Any person or insurer made or threatened to be made a party to any action,* suit or proceeding, *because such person or insurer was a* Member, or a *Servicing Company,* or served on the Governing Committee ... *shall be indemnified against all* judgments, fines, amounts paid in settlement, *reasonable costs and expenses including attorney's fees* and any other liabilities *that may be incurred as a result of such action,* suit or proceeding, or threatened action, suit or proceeding....

(Emphasis added.)

In 1989, the Governing Committee of the Pool denied the application of SFIC to become a servicing carrier. As a result, SFIC sued all servicing carriers, including the Servicing Companies. On May 8, 1989, several months after suit was filed, the Pool's Governing Committee, in accordance with Article VI, paragraph 3 of the Pool's bylaws, authorized and approved the reimbursement of reasonable defense costs associated with the SFIC litigation.

In December 1989, the legislature passed Article 5.76–2 of the Insurance Code, which succeeded predecessor Article 5.76 and replaced the Pool with the Facility. *See* Act of Dec. 11, 1989, 71st Leg., 2d C.S., ch. 1, §§ 17.01–.19, 1989 Tex.Gen.Laws 1, 115–22. Pursuant to the 1989 Act, the Facility assumed all of the obligations and liabilities of the former Pool, and the servicing companies of the Pool continued as servicing companies of the Facility. *Id.* § 17.09.

For almost three years, the Pool and then the Facility indemnified the Servicing Companies for the reasonable attorney's fees they incurred in defending claims made by SFIC. On November 6, 1990, the trial court rendered a final judgment against SFIC on its claim and in favor of the servicing carriers.[1] In 1992, the Servicing Companies submitted bills for indemnity for fees and expenses incurred in 1991 and 1992 for the SFIC defense costs. The general counsel for the Facility, however, did not pay the bills. Instead, the Facility notified the Servicing Companies that it could no longer indemnify the companies for those defense costs, asserting as a defense to payment the recent enactment of Article 5.76–2, section 2.05(i) of the Texas Insurance Code. This provision, which became effective January 1, 1992, reads: "The facility may not indemnify the servicing companies." Tex.Ins.Code Ann. art. 5.76–2, § 2.05(i) (West Supp.1995).

The Original Servicing Companies timely filed their appeals from the Facility's decision with the Board. On March 12, 1993, the Board rendered final orders, finding that the servicing carriers' right to indemnification arose when they entered into the servicing company contracts. The Board thus determined that the Facility's application of section 2.05(i) to the previously vested right to indemnification amounted to a retroactive ap-

---

1. This case was the subject of an appeal to this Court. *Texas Comm'r of Ins. v. Aetna Casualty &* *Surety Co.,* 858 S.W.2d 521 (Tex.App.—Austin 1993, writ granted w.r.m.).

plication of the statute and ordered the Facility to indemnify the Original Servicing Companies. The Facility filed a timely motion for rehearing on March 24, 1993, which was overruled by operation of law on April 30, 1993. Pursuant to section 2001.176 of the Administrative Procedure Act, the Facility sought judicial review in the district court. *See* Tex.Gov't Code Ann. § 2001.176 (West 1995). The Servicing Companies intervened in the proceeding. The district court reviewed the administrative record and found that the findings of fact contained in the Board's orders were supported by substantial evidence; the court further determined that the Board's conclusions of law were sound. The district court therefore affirmed the Board's orders in all respects, ordering the Facility to indemnify the Servicing Companies for legal expenses incurred in the defense of the SFIC litigation.

## DISCUSSION

■ This Court reviews the Board's order under a substantial evidence review. Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 1.03, art. 1.04, 1993 Tex.Gen.Laws 2559, 2562; Tex.Ins.Code Ann. art. 5.76–2, § 2.09(d) (West Supp.1995); Tex.Gov't Code Ann. § 2001.174 (West 1995). For purposes of substantial evidence review, an administrative determination of a question of law, unlike a determination of disputed fact, is not entitled to a presumption of validity. *Teacher Retirement Sys. v. Cottrell*, 583 S.W.2d 928, 930 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.); *see also English v. Central Educ. Agency*, 866 S.W.2d 73, 77 (Tex.App.—Austin 1993, writ requested). If substantial rights of the appellant have been prejudiced by an agency's error of law, we will reverse the trial court's judgment and remand the cause to the agency for further proceedings. Tex.Gov't Code Ann. § 2001.174(2)(D) (West 1995); *Cantu v. Central Educ. Agency*, 884 S.W.2d 565, 566 (Tex.App.—Austin 1994, no writ).

■ Questions of statutory interpretation are questions of law that are not entitled to a presumption of validity. *See Hightower v. State Comm'r of Educ.*, 778 S.W.2d 595, 597 (Tex.App.—Austin 1989, no writ); *Cottrell*, 583 S.W.2d at 930. Therefore, neither a district court nor an appellate court is bound by an administrative agency's construction of a statute. *Sonic Drive-In v. Hernandez*, 797 S.W.2d 254, 257 (Tex.App.—Corpus Christi 1990, writ denied). However, "[c]onstruction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex.1994) (quoting *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993)); *see also Southwestern Bell v. Public Util. Comm'n*, 863 S.W.2d 754, 757 (Tex.App.—Austin 1993, writ denied).

■ Furthermore, ·Texas courts have long held that the interpretation of an unambiguous contract is a question of law. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex.1962). Therefore, an agency's interpretation of an unambiguous contract is not binding on a district or appellate court. Whether a contract is ambiguous is a question of law for the court to decide. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). If a contract is so worded that it can be given a certain and definite meaning or interpretation, it is not ambiguous. *Alba Tool & Supply Co. v. Industrial Contractors, Inc.*, 585 S.W.2d 662, 664 (Tex.1979); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). This appeal involves the construction of a statute—Article 5.76–2, section 2.05(i)—and an unambiguous contract, the servicing company agreement between the Facility and each of the Servicing Companies.[2]

The Facility raises two points of error on appeal. In its first point of error, the Facility contends that the district court erred when it held that application of Article 5.76–2, section 2.05(i) to terminate indemnification in the SFIC litigation constituted an improp-

---

2. The parties do not contend that the servicing company agreement is ambiguous. Instead, they disagree about the legal rights accruing under the terms of the contract, a question of law for this Court to decide.

er retroactive application because the Servicing Companies do not have a vested contractual right to indemnification. In its second point of error, the Facility argues that Article 5.76–2, section 2.05(i) repeals a right arising out of a statute; accordingly, section 2.05(i) is effective immediately. Two questions are thus presented on appeal: (1) whether the Servicing Companies have a vested right to indemnification under the servicing company agreement; and (2) whether the legislature intended section 2.05(i) of Article 5.76–2 to apply retroactively to affect any such right. Construction of the statute and interpretation of the contract involve questions of law; therefore, this Court need not defer to the Board's interpretation but will give serious consideration to the Board's construction of section 2.05(i).

## A. The Servicing Companies' Rights under the Servicing Company Agreements: Vested Contractual Rights or Mere Expectation

■ The Facility concedes that if the Servicing Companies had presented their claims for indemnification before January 1, 1992—the effective date of section 2.05(i)—for work done before that date, the Facility would have been obligated to pay the claims. However, the Facility contends that the Servicing Companies were not entitled to payment for work performed after January 1, 1992. The Facility bases its contention upon the theory that the right to indemnification was not a vested contractual right and therefore section 2.05(i) terminated the Servicing Companies' right to indemnification after January 1, 1992. The crux of the Facility's argument is that the Servicing Companies' right to indemnification did not vest until they actually presented claims for payment to the Facility. Before presentment, the Servicing Companies had a mere expectation of indemnification pursuant to their service company agreements and the Facility bylaws, and after the effective date of section 2.05(i), the Servicing Companies no longer had even an expectation of indemnification. Thus, we must determine if and when the Servicing Companies' right to indemnification vested.

"[T]o be vested, a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand...." *Aetna Ins. Co. v. Richardelle*, 528 S.W.2d 280, 284 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). The servicing company agreement unambiguously provides that the Pool, and thus the Facility by virtue of the fact that it succeeded to all of the Pool's obligations by law, "shall indemnify" each of the Servicing Companies as set out in the bylaws, which at the time the contracts were entered into provided for indemnification of the Servicing Companies for reasonable costs and expenses incurred "because such person or insurer was a ... Servicing Company" of the Facility. This agreement granted the Servicing Companies a bargained-for contractual right to indemnification for expenses incurred in defending a lawsuit, including attorney's fees. The right to indemnification granted in the servicing company agreements represented part of the consideration the Pool offered in return for the Servicing Companies' promises to provide insurance coverage to high-risk insureds. Accordingly, this right was a legal right to the future enforcement of a demand for indemnification that vested at the time the Pool and the Servicing Companies entered into the servicing company agreements.

The Facility contends that section 2.05(i) can be applied retroactively to the Servicing Companies' right to indemnification because this right is not a vested contractual right. According to the Facility, the phrase "as set out in the bylaws" included in the servicing company agreements gives the Facility the right to amend its bylaws at any time and thus change or eliminate the right to indemnification granted in the contract. The Facility cites the rule set out in *National Carloading Corp. v. Phoenix–El Paso Express, Inc.*, 142 Tex. 141, 176 S.W.2d 564 (1943), in support of this contention: "It is generally conceded that a right of action given by a statute may be taken away at any time, even after it has accrued and proceedings have been commenced to enforce it." *Id.* 176 S.W.2d at 569; *see also Houston Indep. Sch. Dist. v.*

*Houston Chronicle,* 798 S.W.2d 580, 589 (Tex.App.—Houston [1st Dist.] 1990, writ denied) ("When the authority granting the right has the power and discretion to take that right away, it cannot be said to be a vested right."). The Facility, as the authority that granted the right to indemnification in its bylaws, argues that because it has the discretion to amend the bylaws to eliminate the right to indemnification, the right to indemnification did not vest at the time the agreements were signed. According to the Facility, the rule set out in *National Carloading* applies to the present case because the bylaws should be given the force and effect of a statute.[3] However, even if we assume that the bylaws have the force of a statute, this assumption does not change our conclusion that the right to indemnification vested when the servicing company agreements were signed.

■■■ The servicing company agreements gave the Servicing Companies a contractual right that incorporated the relevant law existing at that time; the Servicing Companies were not given a cause of action conferred by statute. The original terms of a contract incorporate the relevant law at the time the contract is made. *Estate of Griffin v. Sumner,* 604 S.W.2d 221, 230 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). A contractual right acquired pursuant to the laws existing at the time the contract was entered into cannot be taken away by a subsequent statute, or in this case, an amendment to the bylaws. *See id.* ("A substantive right conferred by the existing law ... may not be defeated by a subsequent amendment of the law."). Therefore, a contractual obligation, which includes the relevant law in force at the time the contract is made, cannot be

impaired by a subsequent change in the law that applies retroactively. *Cardenas v. State,* 683 S.W.2d 128, 131 (Tex.App.—San Antonio 1984, no writ). At the time the servicing company agreements were signed, the law did not prohibit indemnification of the servicing carriers, and the Facility bylaws provided for such indemnification. Thus, the Servicing Companies were given a vested right to indemnification when the servicing company agreements were signed.

■■■ To hold that the right to indemnification did not vest until a servicing carrier was sued or until an even later date—i.e., when the company presented a bill to the Facility for indemnification—would allow the Facility to unilaterally modify a material term of the contract. Under the Facility's reading of the contract, one of the contracting parties—the Facility—could unilaterally modify the indemnification provision if, for instance, indemnification turned out to cost the Facility too much money. This is impermissible. Any statute that "releases a part of the obligation to perform the contractual obligation, or that to any extent amounts to a material change, or modifies it," unconstitutionally impairs the contract. *Texas Workers' Compensation Comm'n v. Garcia,* 862 S.W.2d 61, 100–01 (Tex.App.—San Antonio 1993, writ granted) (citing *Cardenas,* 683 S.W.2d at 131). Furthermore, such a reading of the contract is contrary to a basic tenet of contract law: one party cannot unilaterally modify the terms of the original contract. *See Madril v. Kasishke,* 620 S.W.2d 238, 244 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.) (citing *Kitten v. Vaughn,* 397 S.W.2d 530, 533 (Tex.Civ.App.—Austin 1965, no writ)); *Farmer v. Thompson,*

---

3. The parties disagree about whether the bylaws create contractual rights or statutory rights. The Facility contends that the bylaws should be construed as a statute for this purpose because the bylaws were subject to approval by the Board and meant nothing until the Board approved them. Consequently, the Facility argues that the bylaws are effectively rules promulgated by an administrative agency. Because a rule or order promulgated by an administrative agency acting within its delegated authority should be considered under the same principles as if it were a statute, *see Texas Liquor Control Bd. v. Attic Club, Inc.,* 457 S.W.2d 41, 45 (Tex.1970), the bylaws

should therefore be construed as a statute. The Servicing Companies respond that the Pool's bylaws are not statutes and do not have the effect of statutes because the Pool was not an administrative agency and its bylaws are not rules promulgated by an administrative agency with the force of statutory law. The Servicing Companies contend instead that the bylaws created contractual rights and obligations, citing *Texas Mutual Life Insurance Association v. Tolbert,* 134 Tex. 419, 136 S.W.2d 584, 589 (1940), and *Plainview Independent School District v. Edmonson Wheat Growers, Inc.,* 681 S.W.2d 299, 300 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

289 S.W.2d 351, 355 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.). The Facility is bound by the deal it made, even if it turns out to be a bad deal.

The Facility offers further support for its contention that the statute in the present case can be applied retroactively: "[C]hanges in statutes affecting remedies or procedures may be applied retroactively." *Holder v. Wood*, 714 S.W.2d 318, 319 (Tex.1986). Attorney's fees statutes are remedial in nature and apply to all pending and future actions regardless of the time of the institution or of the accrual of any action asserted. *See City of Dallas v. Arnett*, 762 S.W.2d 942, 952 (Tex.App.—Dallas 1988, writ denied); *Bethel v. Butler Drilling Co.*, 635 S.W.2d 834, 840 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). According to the Facility, under the above rule, Article 5.76–2, section 2.05(i) may properly be applied retroactively because the right to indemnification for attorney's fees is remedial in nature. We disagree. *Arnett* and *Bethel* involved a right to attorney's fees conferred by statute. By contrast, the present case concerns a bargained-for right—the contractual right to indemnification for expenses of defending a lawsuit, which happens to include attorney's fees.

**B.  Retroactive Application of Section 2.05(i)**

"A statute which takes away or impairs vested rights acquired under existing laws, or creates new obligations, imposes new duties, or adopts new disabilities in respect to transactions or considerations already past, cannot be upheld." *Richardelle*, 528 S.W.2d at 284; *see also Ex Parte Abell*, 613 S.W.2d 255, 260 (Tex.1981) (holding that a statute may never be applied retroactively if such application would impair vested substantive rights). To deprive the Servicing Companies of the right to indemnification would impair their vested rights and impose a new duty or disability on the Servicing Companies—the duty or obligation to defend a lawsuit at their own expense, an obligation that was not anticipated at the time the agreements were entered. Therefore, retroactive application of section 2.05(i) to the servicing company agreements would violate the federal and state constitutions' prohibition against the impairment of contracts. U.S. Const. art. 1, § 10, cl. 1; Tex. Const. art. I, § 16; *Sharber v. Florence*, 131 Tex. 341, 115 S.W.2d 604, 606 (1938).

"Texas law militates strongly against the retroactive application of laws." *Davis v. State*, 846 S.W.2d 564, 569 (Tex.App.—Austin 1993, no writ). Therefore, all doubts as to retroactivity are "resolved against retrospective operation of a statute." *Ex parte Abell*, 613 S.W.2d at 258. "An act will not be applied retroactively unless it appears by fair implication from the language used that it was the intent of the Legislature to make it applicable to both past and future transactions." *Id.* The entire act must be examined in determining the legislative intent. *Id.*

No language in section 2.05(i) or in any other provision of Article 5.67–2 suggests that the legislature intended section 2.05(i) to apply retroactively. When the legislature intends for prohibitions on indemnity to apply retroactively, it makes its intention clear. For example, when the legislature amended Chapter 127 of the Civil Practice and Remedies Code to restrict indemnification provisions in certain agreements, the amendments specifically provided: "This Act applies to an indemnity obligation without regard to whether the obligation was entered into before, on, or after the effective date of this Act." Act of May 28, 1989, 71st Leg., R.S., ch. 1102, § 4, 1989 Tex.Gen.Laws 4557, 4559.

In contrast, no such language exists in Article 5.76–2. It is a rule of statutory construction that every word used is presumed to have been used for a purpose, and every word excluded must have been presumptively excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981). Therefore, we construe section 2.05(i) as applying only to indemnity obligations entered into after the effective date of the provision. The Facility can no longer enter into a contract in which it agrees to indemnify a servicing carrier. However, the indemnity obligation in the present case arose before the effective date of section 2.05(i); accordingly, the provision does not apply to the agreement. The Facili-

ty is obligated to fulfill its contractual obligation to indemnify the Servicing Companies for the expenses incurred in the defense of the SFIC litigation.

We overrule both of the Facility's points of error and affirm the trial-court judgment.