# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00050-CV

**Al Boenker Insurance Agency, Inc., Appellant**

**v.**

**The Texas FAIR Plan Association; The Texas Department of Insurance; and Jose Montemayor, Commissioner of Insurance, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. GN301309, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Al Boenker Insurance Agency, Inc., contracted with appellee Texas FAIR Plan Association ("FAIR Plan") to submit applications for homeowners insurance. FAIR Plan issued a bulletin explaining which fees insurance agencies like appellant could charge applicants and reminding the agencies that FAIR Plan could bar them from submitting applications if they violated the contract. Appellant filed suit, seeking a declaratory judgment that the bulletin was void and requesting an injunction to enjoin FAIR Plan from implementing the bulletin. Both parties filed motions for summary judgment, and the district court rendered summary judgment for FAIR Plan.[1]

---

[1] Because the arguments of appellees Texas Department of Insurance and Commissioner of Insurance Jose Montemayor are the same as FAIR Plan's, we will refer to the three appellees collectively as "FAIR Plan."

Appellant now argues that the district court erred because (1) FAIR Plan violated the separation-of-powers doctrine by issuing the bulletin, and (2) FAIR Plan exceeded its authority by restricting the fees that insurance agents may charge and by preventing agents from submitting applications for coverage to FAIR Plan. We will affirm the judgment of the district court.

## BACKGROUND

Because many Texas consumers seeking new homeowners insurance found it difficult or impossible to obtain coverage through the voluntary market, the Texas Legislature passed the Fair Access to Insurance Requirements (FAIR) Plan Act (the "Act"). *See* Act of May 29, 1995, 74th Leg., R.S., ch. 415, § 6, 1995 Tex. Gen. Laws 3005, 3010-14 (codified at Tex. Ins. Code Ann. art. 21.49A, §§ 1-15 (West Supp. 2004)). The Act gave the Texas Insurance Commissioner authority to establish a FAIR Plan Association, which would deliver residential property insurance to Texans in underserved areas. Tex. Ins. Code Ann. art. 21.49A, § 1(a). Pursuant to the Act, the Commissioner and a governing committee developed a Plan of Operation to implement the Act and establish the FAIR Plan Association. *See* 28 Tex. Reg. 2873-80 (2003), *adopted* 28 Tex. Reg. 4153-54 (2003) (codified at 28 Tex. Admin. Code §§ 5.9910-.9929 (2004)).[2]

Once created, FAIR Plan developed its Producer Requirements and Performance Standards Agreement (the "Agreement"), which serves as a private contract between FAIR Plan and insurance agents. An agent who wants to submit applications to FAIR Plan must accept the terms of the Agreement via FAIR Plan's website. The Agreement provides in part:

---

[2] Because the Plan of Operation was adopted and codified without change, we will cite the current version for convenience.

2

1. SPECIFIC AUTHORITY.

   The commission to be received by Producer [appellant], as described in Paragraph 5 hereinafter, is Producer's *sole compensation* for servicing of the policies of insurance placed through Producer pursuant to these Requirements and Standards during the entire term of such policy.

. . . .

5. APPLICATIONS, COMMISSIONS AND REMITTANCES.

   [FAIR Plan] shall pay Producer commissions in the manner, amounts, and at such times as specified in the underwriting manual of [FAIR Plan] . . . as Producer's *full and sole compensation* for the performance of Producer's obligations.

. . . .

8. NOT AGENT OF ASSOCIATION, LIMITATION OF PRODUCER'S AUTHORITY.

   Producer shall be deemed to be *acting solely as the agent of the applicant* of [FAIR Plan] policyholder, *not as an agent of [FAIR Plan]*, any member insurer, administrator, or servicer of Association policies. . . .

. . . .

13. NOTICE OF TERMINATION.

   Producer's authority may be canceled by [FAIR Plan] upon written notice. . . .

(Emphasis added.) The Agreement makes the insurance agent an agent of the policyseeker—not FAIR Plan—and requires the agent to collect and fully remit premiums to FAIR Plan. FAIR Plan then pays the agent commissions as the agent's *sole compensation*.

Appellant and other insurance agencies voluntarily accepted the terms of the Agreement and began submitting applications to FAIR Plan. In March 2003, FAIR Plan learned that some agencies were charging fees for placing FAIR Plan policies, a violation of the Agreement.

3

Appellant was one of these agencies. On March 24, 2003, FAIR Plan issued "Producers Bulletin No. 4," which announced an amendment to paragraph five of the Agreement "to clarify its position with respect to Producers charging and collecting fees for policies written through the FAIR Plan." The amendment, which went into effect on May 1, 2003, states:

> The Producer is prohibited from charging or collecting any fees of any kind in connection with [FAIR Plan] policies other than the premium on [FAIR Plan] policies, unless authorized by [FAIR Plan] in advance in writing.

The bulletin continues: "Agents found to be in violation of this amendment may have their authority to write new business in the FAIR Plan terminated in accordance with Paragraph 13."

In anticipation of the effective date, appellant filed suit on April 24, 2003, seeking a declaratory judgment that the amendment announced in the bulletin was void because FAIR Plan lacked statutory authority to adopt it and requesting an injunction to enjoin FAIR Plan from implementing the amendment. The district court denied appellant's application for a temporary restraining order on April 27, and the amendment became effective on May 1.

In August, appellant filed a motion for partial summary judgment. It asked the district court to enter a declaratory judgment stating:

(i) The FAIR Plan's prohibition on insurance agents charging or collecting fees other than premiums which is contained in the Bulletin is beyond the statutory authority of the FAIR Plan to adopt and, therefore, void;

(ii) The FAIR Plan is without authority to terminate the authority of licensed insurance agents to submit applications to the FAIR Plan and, therefore, such pronouncement by the FAIR Plan is void; and

4

(iii) The action of the FAIR Plan announced in the Bulletin is an attempt to limit or amend a legislative enactment by administrative rule thereby violating the separation of powers doctrine under the Texas Constitution, and therefore, void.

FAIR Plan filed a cross-motion for summary judgment, which the district court granted. The final judgment provides:

[FAIR Plan] may contractually limit the compensation that agents receive in connection with policies issued by the Texas FAIR Plan Association and the Texas FAIR Plan Association may prohibit agents from charging or adding on any fees or costs that might otherwise be permitted by Article 21.35A or Article 21.35B of the Texas Insurance Code.

[N]either Producers Bulletin No. 4 dated March 24, 2003 and promulgated by the Texas Fair Plan Association, nor the Texas FAIR Plan Association's Producer Requirements and Performance Standards agreement is subject to the rulemaking provisions of the Texas Government Code.

Appellant now asks this Court to reverse the district court's judgment and render judgment for appellant.

## STANDARD OF REVIEW

When both parties move for summary judgment, the non-prevailing party may appeal both the grant of the prevailing party's motion as well as the denial of its own. *See Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996). When the district court grants one party's motion and denies the other's, the reviewing court should determine all questions presented and render the judgment that the court below should have rendered. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 322 (Tex. App.—Austin 2002,

5

no pet.). In their cross-motions for summary judgment, the parties raised questions of law that must be determined through statutory construction. We review matters of statutory construction de novo. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). In construing a statute, our objective is to determine and give effect to the legislature's intent. *See id.* (citing *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)); *see also* Tex. Gov't Code Ann. § 312.005 (West 1998). If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning. *Gonzalez*, 82 S.W.2d at 327. We determine legislative intent from the entire act and not just its isolated portions. *Id.* (citing *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998)).

## DISCUSSION

### Separation-of-Powers Doctrine

Appellant argues that FAIR Plan attempted to exercise legislative power by issuing the bulletin, thus violating the separation-of-powers doctrine. FAIR Plan responds that it did not violate the separation-of-powers doctrine because it did not issue a rule and because it acted in accordance with the Act and Plan of Operation.

The Texas Constitution vests the state's legislative power in the Texas House of Representatives and the Texas Senate. Tex. Const. art. III, § 1. Although the separation-of-powers doctrine generally forbids the Texas Legislature from delegating its law-making power to any other body or authority, Texas courts have generally upheld legislative delegations to state or municipal agencies. *Texas Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 467 (Tex. 1997). In *Edgewood Independent School District v. Meno*, 917 S.W.2d 717, 740-741 (Tex. 1995), the Texas Supreme Court stated:

6

> The Texas Legislature may delegate its powers to agencies established to carry out legislative purposes, as long as it establishes "reasonable standards to guide the entity to which the powers are delegated." *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992) (quoting *State v. Texas Mun. Power Agency*, 565 S.W.2d 258, 273 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd)). "Requiring the legislature to include every detail and anticipate unforeseen circumstances would . . . defeat the purpose of delegating legislative authority." *Id.*

When the legislature expressly confers a power on an agency, it also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties. *Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 316 (Tex. 2001). "An agency can adopt only such rules as are authorized by and consistent with its statutory authority." *Lone Star Gas Co.*, 844 S.W.2d at 685 (quoting *State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 798 (Tex. App.—Austin 1982, writ ref'd n.r.e.)). The determining factor in whether a particular administrative agency has exceeded its rule-making powers is that the rule's provisions "must be in harmony with the general objectives of the Act involved." *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968); *Deffebach*, 631 S.W.2d at 798. A rule may not impose additional burdens, conditions, or restrictions beyond or inconsistent with the statutory provisions. *Hollywood Calling v. Public Util. Comm'n*, 805 S.W.2d 618, 620 (Tex. App.—Austin 1991, no writ).

Because the bulletin prohibits agents from collecting fees allegedly permitted by the Texas Insurance Code and permits FAIR Plan to terminate agents, appellant contends that the bulletin is an attempt to amend, modify, restrict, and repeal parts of the insurance code. In order for us to sustain appellant's argument, we would have to initially find that FAIR Plan, by issuing the bulletin, acted as a state agency promulgating a "rule" under the Texas Administrative Procedure Act

7

(the "APA").  *See* Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2000 & Supp. 2004).  Under the

APA:

> (6) "Rule":
>
> (A)  means a state agency statement of general applicability that:
>
> > (i)   implements, interprets, or prescribes law or policy; or
> >
> > (ii)  describes the procedure or practice requirements of a state agency;
>
> (B)  includes the amendment or repeal of a prior rule; and
>
> (C)  does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

*Id.* § 2001.003(6) (West 2000).  Appellant argues that the bulletin is a rule because it "is a statement

of general applicability that prescribes the FAIR Plan's policy as to fees which a licensed insurance

agent may charge."  We reject this argument.

First, FAIR Plan is not a state agency but a nonprofit association that is overseen by

the Insurance Commissioner and governing committee.  *See* Tex. Ins. Code Ann. art. 21.49A,

§§ 2(1), 3(a).[3]  Therefore, the bulletin is not a "state agency statement."  *See* Tex. Gov't Code Ann.

§ 2001.003(6)(A).

---

[3]  While we recognize that FAIR Plan is a statutory creature created to serve an important public purpose, it does not follow that FAIR Plan is a state agency.  *See Southwest-Tex Leasing Co. v. Bomer*, 943 S.W.2d 954, 959-60 n.5 (Tex. App.—Austin 1997, no writ) (Workers' Compensation Insurance Facility not state agency although statutory creature created to serve important public purpose of  providing workers' compensation insurance for those otherwise unable to obtain it).

Second, the bulletin neither "implements, interprets, or prescribes law or policy," nor "describes the procedure or practice requirements of a state agency." *See id.* Even were we to consider FAIR Plan as a state agency, the bulletin merely clarifies the contractual Agreement. Unlike the Act or Plan of Operation, the Agreement is a private contract into which appellant voluntarily entered—not a law or policy. Therefore, the amendment announced by the bulletin does not fall within the rulemaking provisions of the APA. Because we conclude that FAIR Plan did not act as a state agency promulgating a rule when it issued the bulletin, we overrule appellant's first issue on appeal.

**FAIR Plan's Authority**

Appellant also argues that FAIR Plan exceeded its authority by restricting the fees its insurance agents may charge and by preventing agents from submitting applications for coverage to FAIR Plan.

*Fee Restriction*

Appellant contends that FAIR Plan does not have the "authority to restrict by contract or otherwise the statutory right of insurance agents to solicit, collect and receive fees in addition to premium in connection with an insurance application or policy." Appellant relies on section (a) of article 21.35B of the Texas Insurance Code, which provides an exclusive list of permissible payments under the code. It states:

> (a) *No payment may be solicited or collected by an insurer*, its agent, or sponsoring organization in connection with an application for insurance of the issuance of a policy *other than*:

(1)  premiums;

(2)  taxes;

(3)  finance charges;

(4)  policy fees;

(5)  agent fees;

(6)  service fees . . . ;

(7)  inspection fees; or

(8)  membership dues in a sponsoring organization.

Tex. Ins. Code Ann. art. 21.35B(a) (West 2004) (emphasis added).  The bulletin clarifies the Agreement's commission terms and announces an amendment to the Agreement, which clearly prohibits its agents from collecting fees "other than the premium on Association policies." Appellant contends that article 21.35B(a) permits appellant to charge additional fees and FAIR Plan cannot prohibit appellant from doing so.  This argument, however, does not accord with the statute's plain meaning or with the authority granted to FAIR Plan by the Plan of Operation.

The statute applies only to "an insurer, its agent, or sponsoring organization."  *Id.* Because the Agreement unambiguously provides that appellant is an agent solely of the applicant and not an agent of FAIR Plan, the statute does not apply and does not support appellant's contention that it is entitled to charge additional fees.  Even were we to find the statute to be applicable, the permissive word "may" indicates that the statute does not mandate the collection of the eight fees it lists.  Rather, the statute provides an exclusive list of payments that an agent *may* collect under

10

certain circumstances.[4] Finally, notwithstanding any ability an agent might have to collect certain

fees under article 21.35B, parties are free to contractually dictate precisely which fees an agent may

collect. Appellant and others voluntarily entered into the Agreement in order to submit applications

to FAIR Plan. Accordingly, the amendment announced by the bulletin does not circumscribe a

statutory right to charge fees and is in accord with section (a) of article 21.35B of the insurance code.

We now consider whether FAIR Plan has authority to prohibit its agents from

collecting otherwise-permitted fees. The Act does not state which fees an agent may collect, but

directs FAIR Plan to "develop and administer a program for participation" pursuant to the Plan of

Operation. Tex. Ins. Code Ann. art. 21.49A, § 4. The Plan of Operation, which became effective

on May 28, 2003,[5] provides:

---

[4] Appellant also cites section 2A(a) of article 21.02-2 of the insurance code as support for its argument that the bulletin circumscribes a statutory right to charge the fees prohibited by the bulletin and Agreement. That section states:

> A person licensed under this code who receives a commission or other consideration for services as an insurance agent *may not receive an additional fee for those services . . . except a fee described by Article 21.35A or 21.35B of this code*.

Tex. Ins. Code Ann. art. 21.02-2, § 2A(a) (West Supp. 2004) (emphasis added). The plain meaning of this section does not require the collection of fees described in article 21.35A or 21.35B. Rather, it prohibits the collection of fees *except* those listed in the articles.

[5] The fact that the Agreement was in effect before the Plan of Operation does not affect our disposition. The original terms of a contract incorporate the relevant law at the time the contract is made. *Texas Workers' Comp. Ins. Facility v. State Bd. of Ins.*, 894 S.W.2d 49, 54 (Tex. App.—Austin 1995), *judgm't withdrawn by agr.*, 910 S.W.2d 176 (Tex. App.—Austin 1995, no writ). In this case, the Agreement accords with the relevant statutes in effect at the time the Agreement was written, as well as the now-effective Plan of Operation. *See* Tex. Ins. Code Ann. arts. 21.02, 21.35, 21.49A; 28 Tex. Admin. Code §§ 5.9910-.9929 (2004).

11

§ 5.9913. *Authority of Agents and Commissions*.

. . . .

(c)  A commission shall be paid pursuant to a commission schedule set by the Governing Committee and approved by the Commissioner. The commission shall be based on paid gross written premiums and subject to adjustment based on policy changes and cancellations. The agent shall remit the gross premium collected on an Association policy to [FAIR Plan], and [FAIR Plan] will pay the commission.

(d)  [FAIR Plan] shall establish minimum requirements and performance standards for agents who submit applications to [FAIR Plan] . . . .  Such minimum requirements and performance standards shall be binding upon any agent as a condition of such agent's request for . . . receipt of commissions from [FAIR Plan] . . . .

28 Tex. Admin. Code § 5.9913(c)-(d) (2004). FAIR Plan established its minimum requirements and performance standards in the Agreement, to which appellant agreed before it began submitting applications to FAIR Plan. Paragraph five of the Agreement states:

Association shall pay Producer commissions in the manner, amounts, and at such times as specified in the underwriting manual of [FAIR Plan] . . . as Producer's *full and sole compensation* for the performance of Producer's obligations.

(Emphasis added.) The amendment to paragraph five, which the bulletin announced, states:

The Producer is prohibited from charging or collecting any fees of any kind in connection with Association policies other than the premium on Association policies, unless authorized by [FAIR Plan] in advance in writing.

After comparing the bulletin and Agreement with the Plan of Operation, we find that both contain the same conditions: the agents will collect only premium fees from applicants; the agents will submit all fees to FAIR Plan; and FAIR Plan will pay agents their commission. Appellant

12

voluntarily agreed to these conditions when it chose to submit applications to FAIR Plan. Because the Agreement accords with the Plan of Operation and the insurance code, we conclude that FAIR Plan did not exceed its authority by contractually prohibiting appellant from collecting additional fees.

### *Agent Termination*

Appellant also argues that the bulletin's statement that "agents found to be in violation of this amendment may have their authority to write new business in the FAIR Plan terminated in accordance with Paragraph 13" exceeds FAIR Plan's authority. Appellant argues that, because the Act states that "applications [to FAIR Plan] may be made on behalf of the applicant by a licensed local recording agent," FAIR Plan has unlawfully restricted appellant's statutory right to submit applications to FAIR Plan. Tex. Ins. Code Ann. art. 21.49A, § 6(b).

First, nothing in the Act guarantees an insurance agency like appellant the right to submit applications to FAIR Plan. *See id.* The Act delegates to the Commissioner and his governing committee the power to make a Plan of Operation and oversee FAIR Plan. *Id.* § 3(a), (e). The Plan of Operation explicitly grants FAIR Plan the "power to bar an agent from submitting new applications to or renewing business in FAIR Plan if the agent refuses to demonstrate and certify compliance with [its] requirements and standards or the agent violates any of [its] requirements or standards." 28 Tex. Admin. Code § 5.9913(d) (2004). FAIR Plan, therefore, had the authority to include paragraph 13 in the Agreement. Appellant voluntarily agreed to the Agreement's terms when it chose to submit applications to FAIR Plan, and the bulletin merely reminds insurance agents that they may be terminated under paragraph 13. Because the Plan of Operation allows FAIR Plan

13

to bar agents from submitting applications, we conclude that FAIR Plan did not exceed its authority when it stated that fact in the bulletin.

Because we conclude that FAIR Plan acted within its authority when it issued the bulletin, we overrule appellant's second issue on appeal.

## CONCLUSION

Having overruled appellant's issues, we affirm the judgment of the district court.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   July 29, 2004

14